# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LINDA STERMER,

     Petitioner,

v.

MILLICENT WARREN,

     Respondent.

_____

CASE NO. 2:12-cv-14013

HON. ARTHUR J. TARNOW

MAG. DAVID R. GRAND

## ANSWER IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS

# TABLE OF CONTENTS

Introduction ................................................................................ 1

    Statements in Compliance with Habeas Rule 5(b) ......................... 4

    A.   Statute of Limitations ............................................... 4

    B.   Exhaustion ............................................................... 4

    C.   Procedural Default ................................................... 4

    D.   Non-retroactivity Doctrine ....................................... 4

Statement of the Case ............................................................... 5

    A.   Trial Facts .............................................................. 5

    B.   Procedural History .................................................. 7

Standard of Review Pursuant to AEDPA ................................. 13

Argument .............................................................................. 20

I.    Stermer's claims that there was insufficient evidence to support her conviction of first-degree felony murder because the prosecution could not establish that an arson occurred and that her conviction was against the great weight of the evidence are meritless.  The Michigan Court of Appeals' determination that the evidence supported conviction was not objectively unreasonable. ......................................... 20

    A.   To the extent Stermer argues that her convictions are against the great weight of the evidence, the claim fails because it is not cognizable on federal habeas review. ........ 21

    B.   The standard by which sufficiency claims are analyzed on habeas review is doubly deferential. ............................... 22

    C.   Stermer has not met AEDPA's stringent standard because ample evidence was presented to support her

identity as Todd Stermer's killer, as well as her identity as the person who committed the arson. ...............26

II.   Stermer's claim that the trial court erred, thereby denying her due process, when it allowed the prosecutor to present expert testimony from the fire expert, Det. Scott Leroy, is not cognizable and meritless. The state trial court's rejection of this claim was not objectively unreasonable. ............................42

III.  Stermer's claim that the prosecutor committed misconduct several times throughout the trial is meritless, as they did not have such an effect as to require relief. In the alternative any error was harmless. Similarly meritless is Stermer's related claim that her trial counsel was ineffective for failing to object to the alleged misconduct. ..............................45

   A.   The burden to demonstrate prosecutorial misconduct in a habeas proceeding is high. .................................................45

   B.   The individual subclaims of prosecutorial misconduct are meritless. The state trial court's rejection of the claims was not objectively unreasonable. ..............................47

       1.   The prosecutor properly argued the record evidence. But even if the prosecutor did err, any error was harmless. .......................................................48

       2.   The prosecutor did not improperly denigrate Stermer during his closing argument. But even if the prosecutor did err, any error was harmless. .........50

       3.   The prosecutor did not improperly vouch for the veracity of certain witnesses. But even if the prosecutor did err, any error was harmless. ...............54

       4.   The prosecutor never presented perjured testimony. But even if the prosecutor did err, any error was harmless. .......................................................57

   C.   Stermer's related claim of ineffective assistance of counsel similarly fails. ..........................................................60

IV.   To show ineffective assistance of counsel, a habeas petitioner must show that trial counsel performed deficiently and that counsel's performance resulted in prejudice.  Where Stermer has failed to demonstrate that the state trial court unreasonably rejected this claim, relief is not warranted. ........... 62

    A.   *Strickland* test ....................................................................... 62

    B.   Stermer's claim that her counsel was ineffective for failing to adequately prepare for the case, present expert testimony to counter that presented by the prosecution, failing to object to the testimony presented by the prosecutor's expert witness, and coercing her into not testifying on her own behalf is meritless. ............... 65

        1.   Defense counsel's cross-examination of witnesses was not indicative of a failure to adequately prepare for trial. ........................................................... 66

        2.   Defense counsel's failure to challenge the prosecutor's fire expert and to call a fire expert on behalf of the defense were not deficient, nor did those actions result in prejudice. ................................ 68

        3.   Defense counsel did not coerce Stermer into giving up her right to testify on her own behalf. ......... 73

V.    Stermer's claim that she was denied the effective assistance of counsel during her direct appeal is meritless. ........................... 76

Conclusion ............................................................................. 80

Relief ..................................................................................... 84

Certificate of Service ............................................................. 85

## INTRODUCTION

Petitioner, Linda Stermer, took the life of her husband of 14 years in an exceptionally cruel way.  After Todd Stermer discovered his wife was having an affair, he confronted her.  Her response was to drug his coffee with Vicodin, douse him with gasoline, and set him on fire.  The burns and smoke inhalation was the ultimate cause of his death.  But when the fire did not kill Todd right away, Stermer followed him out of the house as he was trying to put the fire out.  She got into her van and bowled Todd over, leaving blood for evidence technicians to find on the bumper.  Her only explanation for the fire was that fumes must have gotten on Todd when he was working on the furnace and they ignited when he walked passed the fire place.  That suggestion is as absurd as it is improbable.  For her role in her husband's death, Stermer is rightly serving a life sentence.

As result of her Van Buren County jury conviction of first-degree felony murder, Mich. Comp. Laws 750.316(b), the State now holds Stermer in custody in the Michigan Department of Corrections where she is currently serving a life sentence.

Stermer commenced this action under 28 U.S.C. § 2254 by filing a petition with this Court. The State understands the petition to be raising the following claims:

    I.    There was insufficient evidence to sustain petitioner's conviction of arson.

    II.    Petitioner's conviction was based upon incompetent, unreliable evidence that misled the jury, supplanted jury fact finding, was manifestly unjust, and denied due process.

    III.    Petitioner was denied due process and fundamental fairness by prosecutorial misconduct in vouching, bolstering, providing evidence, and deliberately misleading the jury.

    IV.    Ineffective assistance of counsel denied petitioner a fair trial.

    V.    Petitioner was prejudiced by ineffective assistance of counsel on appeal.

Should the Court interpret the petition to be raising different claims, the State requests an opportunity to file a supplemental pleading. To the extent that Stermer failed to raise any other claims that she raised in the state courts, those claims are now abandoned. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting

the issue in her brief).  Thus, habeas review of abandoned claims is barred.

The State now answers the petition and requests that it be denied.

## STATEMENTS IN COMPLIANCE WITH HABEAS RULE 5(b)

With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

### A.    Statute of Limitations

The State is not arguing that any of Stermer's habeas claims are barred by the statute of limitations.

### B.    Exhaustion

The State is not arguing that any of Stermer's habeas claims are barred by the failure to exhaust a claim for which a state court remedy exists.

### C.    Procedural Default

The State is not arguing that any of Stermer's habeas claims are barred by procedural default.

### D.    Non-retroactivity Doctrine

The State is not arguing that any of Stermer's claims are barred by the non-retroactivity doctrine.

# STATEMENT OF THE CASE

## A.    Trial Facts

The Michigan Court of Appeals accurately summarized the facts

adduced at trial as follows:

> Defendant's victim was her husband of 14 years, Todd
> Stermer.  The prosecution presented a plethora of
> circumstantial evidence to support its theory that defendant
> either sedated Todd or knocked him unconscious before
> dousing him with gasoline and setting him on fire. . . .
>
> The night before Todd Stermer died, he discovered that
> defendant was having an extramarital affair and informed
> defendant that he wanted a divorce.  The next morning, a
> gas station attendant witnessed defendant filling a container
> with gasoline.  Shortly thereafter, defendant gave her three
> teen-aged sons money and sent them out of the house.  When
> the boys left, their father appeared to be sleeping in front of
> the television and defendant would not allow the boys into
> the room.  Around 3:30 p.m., neighbors saw smoke billowing
> from the Stermer house and they drove over to assist.  These
> neighbors witnessed defendant drive her van in reverse
> down the driveway, but then change gears and drive forward
> behind the house.  When the neighbors exited their vehicle
> to speak to defendant, they discovered Todd's body lying
> alongside the driveway.  They also noticed blood on the
> bumper of defendant's van.  The medical examiner
> eventually determined that Todd had died from burns and
> smoke inhalation.  Todd also had cranial lacerations
> consistent with blunt force trauma, various bodily injuries
> consistent with being run over by a vehicle, and a small
> amount of Vicodin[] in his urine.  Forensics later identified
> the blood on defendant's van as belonging to Todd.
>
> During the criminal investigation, defendant gave
> varying accounts of how she escaped the home following the

fire and what she had been doing when the fire began. Defendant characterized the fire as an accident, telling investigators that Todd likely got gasoline vapors on his clothing while repairing their furnace and those vapors likely ignited when Todd approached the fire burning in the fireplace.  An arson investigator later discredited that theory.  Defendant's friend, Kate Fox, also offered a damaging account of defendant's pre-offense conduct.  For approximately four months, defendant had been discussing how she could get rid of her husband, including shooting him and running him over with a car.  Fox had previously sent police to the Stermer house when defendant threatened to shoot Todd.  Following the murder, defendant told Fox that she wanted to sneak into her now burnt-out home to retrieve a coffee mug that might contain traces of a sedative that she had planned to give to Todd.  Defendant was also betrayed by a fellow prisoner who indicated that defendant admitted to drugging Todd, hitting him over the head, and then using gasoline to light him on fire.

*People v. Stermer*, No. 297057, 2011 WL 2507848, at *1 (Mich. Ct. App. Jun. 23, 2011).  This recitation of the facts is entitled to the presumption of correctness under § 2254(e)(1), and Stermer has not demonstrated through clear and convincing evidence that this summary is incorrect.

The presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records.  *Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010);

*Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v.*

*Mata*, 449 U.S. 539, 546-47 (1981)).

The State opposes any factual assertions made by Stermer that

are not directly supported by—or consistent with—the state court

record, because she has failed to overcome the presumption of factual

correctness under 28 U.S.C. § 2254(e)(1) or meet the requirements of 28

U.S.C. § 2254(e)(2).

### B.    Procedural History

Stermer was convicted of first-degree felony murder.  The trial

court sentenced her to life in prison.

Following her conviction and sentence, Stermer filed a claim of

appeal in the Michigan Court of Appeals, which raised the following

claims:

I.    The district court abused its discretion in binding over
to circuit court and the circuit court erred refusing to
quash the bindover.

II.    The trial court erred in denying the motion for a
directed verdict.  Defendant's convictions for first
degree murder and felony murder must therefore be
vacated because the evidence is insufficient to support
a finding of guilt beyond a reasonable doubt that (1)
the house fire was caused by arson, I.E. a deliberately
set fire or (2) that it was defendant who started the
fire.

III.    The trial court abused its discretion in denying the
motion for a new trial because the verdict is against
the great weight of the evidence.

The Michigan Court of Appeals affirmed Stermer's conviction in

an unpublished opinion. *Stermer*, 2011 WL 2507848, at *1, 4.

Stermer subsequently filed an application for leave to appeal in

the Michigan Supreme Court, which raised the same claims as in the

Michigan Court of Appeals.  The Michigan Supreme Court denied the

application because it was not persuaded that the questions presented

should be reviewed by the Court. *People v. Stermer*, 805 N.W.2d 434

(Mich. 2011) (unpublished table decision).

Stermer then filed her original petition for habeas relief with this

court.  (R. 1, Pet.)  This Court, sua sponte, issued an opinion and order

holding the petition in abeyance while Stermer returned to the state

court to exhaust the claims raised.  (R. 10, Op. and Order.)

Stermer then returned to the trial court and filed a motion for

relief from judgment, which contained the following claims:

I.    Defendant was denied her Fourteenth Amendment
right to a fair trial when the court allowed Scott Leroy
to testify as an expert on cause and origin.  The court
did not fulfill its role as "gate keeper" when Leroy was
allowed to present unreliable testimony to the jury as
an expert, which did not comport with MRE/FRE 702.

The allowance of Leroy's testimony was an abuse of discretion and prejudicial to Stermer under MRE/FRE 403.

II. The prosecutor prejudiced defendant and committed reversible error when he engaged in improper conduct:

   A. Vouching for and bolstering the credibility and testimony of seven State's witnesses during closing arguments.

   B. Offered facts not in evidence, he knew to be false, and mischaracterized facts during closing arguments.

   C. Denigrated the defendant and appealed to the passions and emotions of the jury with repeated, impermissible name calling and character assassination of Stermer during closing arguments.

   D. Eliciting known false testimony from State's witness Cory Pierce.

   E. Elicited testimonial evidence from Detective Rought, which could not be supported with documents due to destruction of evidence.

III. Defense counsel's performance was constitutionally deficient under the Sixth Amendment and Const 1963, art 1, § 20, and precluded defendant from mounting a substantive and effective defense.  This is a violation of guaranteed due process rights under the Fourteenth Amendment, and Const 1963, art 1, § 20 where counsel failed to: Challenge the theory of arson on a scientific level, investigate and prepare, to consult with an expert to rebut the prosecution's arson expert, to interview any State's witnesses or experts, to question potential witnesses and to object to improper conduct by the prosecutor, and failure to be aware of rules critical to the case.

IV.   Appellate counsel raised weak issues on appeal which
      ignoring stronger, more meritorious arguments.
      Counsel's deficient performance prejudiced Stermer
      and violated her Sixth Amendment due process rights.

V.    Defendant's conviction should be reversed because the
      evidence was legally insufficient to prove beyond a
      reasonable doubt that the fire was intentionally set or
      that defendant intentionally set the fire that resulted
      in the felony murder charge.  The evidence was
      contrary to the great weight of the evidence and
      MRE/FRE 702.

The trial court denied the motion for relief from judgment on the

merits.  (2/28/14, Van Buren Cir. Ct. Order at 1-3.)  It also rejected

Stermer's motion for reconsideration.  (9/10/14, Van Buren Cir. Ct.

Order at 1-3.)

After the trial court denied the motion for relief from judgment,

Stermer filed an application for leave to appeal in the Michigan Court of

Appeals, both independently and through counsel, raising the same

claims.  The court denied the application for leave to appeal for failure

to establish entitlement to relief under Michigan Court Rule 6.508(D).

(12/11/14, Mich. Ct. App. Order at 1.)  It similarly denied Stermer's

motion for reconsideration.  (2/19/15, Mich. Ct. App. Order at 1.)

Stermer applied for leave to appeal this decision in the Michigan

Supreme Court, through counsel, and raised the following claims:

I.   Defendant's conviction is based upon incompetent, unreliable evidence, which misled the jury, supplanted jury fact finding, and was manifestly unjust requiring relief.

II.  Defendant was prejudiced by ineffective assistance of counsel at trial

    A. Failure to investigate and prepare for trial

    B. Failure to file Motion in Limine

    C. Failure to prepare for cross-examination.

    D. Failure to present evidence

    E. Failure to object to prosecutorial misconduct

    F. Failure to correct perjury

    G. Conduct not strategic.  Trial counsel's failures were prejudicial.

III. Defendant was denied due process and fundamental fairness by prosecutorial misconduct in vouching, bolstering, providing evidence and deliberately misleading the jury.

IV.  Defendant was prejudiced by ineffective assistance of counsel on appeal.

Stermer was again denied relief under Michigan Court Rule 6.508(D).

*People v. Stermer*, No. 150997, 2015 WL 7573591, at *1 (Mich. Nov. 23, 2015).

Following the conclusion of her collateral appeal, Stermer filed a motion in this Court to lift the stay and reopen the case; that motion

was granted and a responsive pleading was ordered.  (R. 20, Mot. to

Reopen Case; R. 22, Order.)

## STANDARD OF REVIEW PURSUANT TO AEDPA

Congress mandated the standards of review in federal habeas proceedings in 1996 in the Antiterrorism and Effective Death Penalty Act (AEDPA).  Recognizing the foundational principle that "[s]tate courts are adequate forums for the vindication of federal rights," "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Burt v. Titlow*, 134 S. Ct. 10, 15, 16 (2013); 28 U.S.C. § 2254(d).

Congress has limited the availability of federal habeas corpus relief "with respect to any claim" the state courts "adjudicated on the merits."  28 U.S.C. § 2254(d).  Habeas relief may not be granted to a habeas petitioner under § 2254(d) unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

With respect to § 2254(d)(1), a state court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts." *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 n.2 (2013) (internal quotation marks and citation omitted). A state court decision involves an unreasonable application of clearly established Federal law pursuant to § 2254(d)(1) if "the state-court decision identifies the correct governing legal principle in existence at the time," but "unreasonably applies that principle to the facts of prisoner's case." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (internal quotation marks and citation omitted).   Where "[n]o precedent of [the Supreme Court] clearly forecloses" a state court's ruling, it simply cannot be an unreasonable application of Supreme Court precedent. *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta," of the Supreme Court's decisions.  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotations and citations omitted).  "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id*.

Moreover under § 2254(d)(1), the relevant Supreme Court precedent includes only the decisions in existence "as of the time the

14

state court renders its decision." *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011) (internal quotation marks and emphasis omitted); *see also Pinholster*, 563 U.S. at 182 ("State-court decisions are measured against [the Supreme] Court's precedents as of the time the state court renders its decision.") (internal quotation marks omitted).

Under § 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Titlow*, 134 S. Ct. at 15 (internal quotation marks and citation omitted). "Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross*, 132 S. Ct. 490, 495 (2011) (per curiam).

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). This means that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Instead, the state court's "application must be

15

objectively unreasonable." *Id.* That distinction creates "a substantially higher threshold" to obtain relief than de novo review. *Id.* A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Etherton*, 136 S. Ct. at 1152.

"It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). And federal court of appeals precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam) (citation omitted); *see also Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (providing that absent a decision by the Supreme Court addressing "the specific question presented by [a] case" a federal court cannot reject a state court's assessment of claim). And, as the Supreme Court recently held, where no Supreme Court cases confront "the specific question presented" by the habeas petitioner, "the state court's decision [cannot]

16

be contrary to any holding from this Court." *Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) (per curiam) (internal quotation marks and citation omitted).

Further, the Supreme Court has specifically warned habeas courts that, "[b]y framing [Supreme Court] precedents at [too] high [a] level of generality, [it] could transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court.'" That "approach would defeat the substantial deference that AEDPA requires" be given to state-court decisions. *Nevada v. Jackson*, 133 S. Ct. 1990, 1994 (2013) (per curiam).

Moreover, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Richter*, 562 U.S. at 102. This standard protects against intrusion of federal habeas review upon "both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Id.* at 103 (internal quotation marks and citation omitted).

A federal court must refrain from issuing a writ "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (internal quotation marks and citation omitted).  To clear the § 2254(d) hurdle, a habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.  "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

The burden of providing a petitioner a new trial "should not be imposed unless *each* ground supporting the state court decision is examined and found to be unreasonable under AEDPA." *Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012).

The Supreme Court has also instructed habeas courts to apply a rebuttable presumption that a "federal claim was adjudicated on the merits" even "[w]hen a state court rejects a federal claim without expressly addressing that claim." *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013). *See also Kernan v. Hinojosa*, 136 S. Ct. 1603, 1606 (2016) (per curiam) ("Containing no statement to the contrary, the Supreme

Court of California's summary denial of Hinojosa's petition was therefore on the merits."). "[S]tate-court decisions [must] be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (internal quotation marks and citation omitted). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunction in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (internal quotation marks and citation omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102 (citation omitted).

Finally, the petitioner's burden is made even heavier by the fact that a federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.

# ARGUMENT

**I.**     **Stermer's claims that there was insufficient evidence to support her conviction of first-degree felony murder because the prosecution could not establish that an arson occurred and that her conviction was against the great weight of the evidence are meritless.  The Michigan Court of Appeals' determination that the evidence supported conviction was not objectively unreasonable.**

In her first claim, Stermer argues that her conviction of first-degree felony murder was against the great weight of the evidence, and, relatedly, that there was insufficient evidence presented to support that conviction.  Specifically, Stermer asserts that there was not enough evidence that there was an arson (the underlying felony) or that she perpetrated it, along with the murder charge—especially considering the misleading nature of prosecution's arson expert.

Stermer is not entitled to relief because ample evidence was presented to support the Michigan Court of Appeals' determination that she set the fire and caused the trauma leading to Todd Stermer's death.  Her ardent disagreement with the state appellate court's interpretation of the evidence and the witnesses' credibility is not enough to overturn her conviction.

**A.     To the extent Stermer argues that her convictions are against the great weight of the evidence, the claim fails because it is not cognizable on federal habeas review.**

As an initial matter, to the extent Stermer argues that her murder conviction is against the great weight of the evidence, this claim must fail because such claims are generally not cognizable on habeas review:

> A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. . . . A claim that a verdict went against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. . . . The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. . . . Because there was sufficient evidence to convict petitioner of these crimes, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief.

*Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

Instead, the appropriate claim on habeas review is whether there was sufficient evidence to support the conviction.  As the State will discuss in the following sections, ample evidence was presented to support her conviction of first-degree felony murder as well as the underlying felony charge of arson.

Nevertheless, the Michigan Court of Appeals' determination that the verdicts were not against the great weight of the evidence was not objectively unreasonable. *People v. Stermer*, No. 297057, 2011 WL 2507848, at *2-4 (Mich. Ct. App. Jun. 23, 2011). This portion of Claim I should be denied.

### B. The standard by which sufficiency claims are analyzed on habeas review is doubly deferential.

Clearly established Supreme Court law holds that the Due Process Clause protects a criminal defendant from being convicted of a crime without proof beyond a reasonable doubt of every element of an offense. *In re Winship*, 397 U.S. 358, 361 (1970). With respect to sufficiency claims, the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), held that the critical inquiry on sufficiency claims must determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. The inquiry is not whether the reviewing court itself believes that the evidence at trial established guilt beyond a reasonable doubt. Instead, "the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Id.* Thus, under

*Jackson*, a habeas petitioner is entitled to relief on a sufficiency claim

"if it is found that upon the record evidence adduced at the trial that no

rational trier of fact could have found proof of guilt beyond a reasonable

doubt." *Id.* at 324.

The Supreme Court emphasized that all of the evidence is to be

considered in the light most favorable to the prosecution. *Id.* at 319.

This standard was to be applied whether the evidence of guilt was

direct or circumstantial. Circumstantial evidence is entitled to equal

weight as direct evidence, and the prosecution may meet its burden

entirely through circumstantial evidence. *Desert Palace, Inc. v. Costa*,

539 U.S. 90, 100 (2003).

Moreover, in *Jackson* the Supreme Court stated that prosecutor

did not have an affirmative duty to rule out every hypothesis except

that of guilt. *Jackson*, 443 U.S. at 326. It is the province of the fact-

finder—in Stermer's case, the jury—to weigh the probative value of the

evidence and resolve any conflicts in testimony. *Id.* at 318-19. And "a

federal habeas court faced with a record of historical facts that supports

conflicting inferences must presume—even if it does not appear

affirmatively in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

Federal habeas courts reviewing sufficiency claims are cautioned not to reweigh the evidence or redetermine the credibility of witnesses whose demeanor had been observed by the finder of fact. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

The scope of review on habeas review of the sufficiency of evidence was extremely limited, even before the enactment of AEDPA. 28 U.S.C. § 2254(d) created additional limits on a federal habeas court's review. In reviewing a sufficiency claim, deference is now required at two levels: first, to the jury's verdict as contemplated by *Jackson*, and second, to the state court's consideration of the jury's verdict as dictated by AEDPA. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

To determine whether a state court's application of clearly established law was unreasonable, the Supreme Court has stated, as noted above, that "the range of reasonable judgment can depend in part on the nature of the relevant rule." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). The standard for sufficiency claims constitutes a

24

general rule which requires the federal courts to allow the states more leeway in its application. *Id.* at 663-64.

The Supreme Court has cautioned federal courts against too readily granting habeas relief because of disagreement with the State court adjudication. The Supreme Court has stated that "[a] federal court's collateral review of a state court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The Supreme Court has explained that 28 U.S.C. § 2254(d) imposes a "highly deferential standard" and "demands that state-court decisions be given the benefit of the doubt" and a "readiness to attribute error is inconsistent with the presumption that State courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

The Michigan Court of Appeals did not unreasonably apply this standard to the facts of this case.

**C.**   **Stermer has not met AEDPA's stringent standard because ample evidence was presented to support her identity as Todd Stermer's killer, as well as her identity as the person who committed the arson.**

Again, Stermer was convicted of callously setting her husband on fire and then running him over with her van.  She argues that the prosecutor did not prove that *she* was the one who killed Todd or that an arson even occurred.  Instead, she argues that she had nothing to do with Todd's death and that the fire was caused by gasoline vapors accidently igniting.  The problem, though, is that the jury—as the finder of fact—interpreted the evidence differently.

The Michigan Court of Appeals considered and rejected Stermer's claim using the correct constitutional standard:

> Defendant argues that the prosecution presented insufficient evidence to support her conviction for felony murder and, therefore, the trial court erred in denying her motion for a directed verdict of acquittal.  Defendant also challenges the trial court's denial of her motion for new trial where her conviction was against the great weight of the evidence.  We reject each challenge.
>
> In reviewing a trial court's denial of a motion for directed verdict of acquittal, we review "the evidence in the light most favorable to the prosecution in order to 'determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt.'"  *People v. Gillis,* 474 Mich. 105, 113, 712 NW2d 419 (2006), quoting *People v. Riley (After Remand),* 468 Mich. 135, 139-140; 659 NW2d 611 (2003).  The

26

prosecution is not required to present direct evidence of a defendant's guilt. Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime. *People v. Jolly,* 442 Mich. 458, 466; 502 NW2d 177 (1993).

We review the trial court's denial of defendant's motion for new trial based on the great weight of the evidence for an abuse of discretion. *People v. Unger,* 278 Mich. App 210, 232; 749 NW2d 272 (2008). The court should grant a new trial "only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v. Lemmon,* 456 Mich. 625, 642; 576 NW2d 129 (1998). Most motions for a new trial involve some challenge to witness credibility, *id.* at 638; however, the judge may not sit as a "thirteenth juror" to evaluate the credibility of the evidence. *Id.* at 639-640. A court may interject its opinion regarding credibility only in exceptional circumstances, such as when the "testimony contradicts indisputable physical facts and laws, ... where a witness's testimony is so inherently implausible that it could not be believed by a reasonable juror, ... or where the witnesses [sic] testimony has been seriously impeached and the case marked by uncertainties and discrepancies." *Id.* at 643-644 (internal quotations and citations omitted). If one of these exceptional circumstances exists, the judge then must consider whether the jury convicted an innocent person or if "'it would be a manifest injustice' to allow the guilty verdict to stand." *Id.* at 644 (internal citation omitted).

Here, defendant was convicted of felony murder based on the underlying offense of arson. To convict a defendant of felony murder, the prosecution must present evidence to establish the following elements beyond a reasonable doubt:

> (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm

was the probable result i.e., malice, (3) while
committing, attempting to commit, or assisting in
the commission of any of the felonies specifically
enumerated in [MCL 750.316, including arson].
[*People v. Carines,* 460 Mich. 750, 758-759; 597
NW2d 130 (1999[]).]

To establish the underlying arson offense, the
prosecution must prove that the defendant "wilfully or
maliciously burn[ed] any dwelling house, either occupied or
unoccupied, or the contents thereof...."  MCL 750.72.

In arson cases, the trier of fact usually draws
inferences from circumstantial evidence: "There
is rarely direct evidence of the actual lighting of a
fire by an arsonist; rather, the evidence of arson
is usually circumstantial."  [*People v. Nowack,*
462 Mich. 392, 402; 614 NW2d 78 (2000), quoting
*Fox v. State,* 179 Ind. App. 267, 277; 384 NE2d
1159 (1979).]

The crux of defendant's appellate argument is that the
evidence supports a more likely conclusion than her guilt; it
establishes that Todd actually started the fire, either
intentionally or accidentally.  However, defendant misses
the point of a jury trial: the jury heard the evidence both for
and against defendant and determined that the evidence
against defendant was more credible.  The evidence against
defendant does not "contradict[ ] indisputable physical facts
or law," is not "so inherently implausible" as to defy all
reasonable belief, and was not so "seriously impeached" that
the verdict must be overturned.  *Lemmon,* 456 Mich. at 643-
644.  Accordingly, neither the trial court nor this Court may
"disturb the jury findings" regarding the credibility of the
evidence even if our judicial "judgment might incline [us] the
other way.  *Id.* at 644.

The prosecution in this case presented significant
evidence at trial that defendant had motive and opportunity

to commit the charged offense and presented sufficient circumstantial evidence to connect defendant to the commission of the crime.  The prosecution presented evidence that defendant had been having an affair and wanted to leave her husband for her boyfriend.  Defendant made several comments to a friend indicating that she would rather kill Todd than divorce him.  Defendant purchased a container of gasoline on the morning of the murder and later denied it.  Defendant sent her children out for the day and would not allow them to see their father before they left.  Todd suffered head injuries consistent with being hit with a blunt object and his urine sample tested positive for Vicodin[].  The clothing that Todd had been wearing at the time of the fire smelled strongly of gasoline and proved to be saturated with gas.  Defendant drove over Todd in the driveway after he escaped the fire, a fact from which the jury could infer that defendant wanted to finish the job.  Defendant showed a consciousness of guilt by telling varying tales of how she escaped the burning home.  She also told a friend that she needed to return to the home to retrieve incriminating evidence (a coffee cup that may have contained traces of a sedative).  Finally, defendant confessed her crimes to a fellow jail inmate.

The prosecution also presented evidence that the fire was set intentionally, not accidentally.  The fire was fast moving and quite destructive, suggesting that someone used an accelerant to start it.  The arson investigator opined that the point of origin for the fire was the center of the living room where Todd lay on a recliner.  Further, the investigator opined that Todd was the source point of the fire given the presence of gasoline on his sweatpants and underwear.

Relying on the "doctrine of chances," defendant contended that Todd's involvement in two prior house fires rendered it likely that he had started the fire that took his life.  The doctrine of chances holds that "when someone suffers a specific type of accident with extraordinary frequency, it is objectively probable that one or more of the

incidents were not accidents." *People v. Mardlin,* 487 Mich. 609, 635; 790 NW2d 607 (2010). Despite defendant's presentation of evidence supporting this theory, the jury convicted her of felony murder, suggesting that it found this theory implausible.

We conclude that the prosecution presented sufficient circumstantial evidence to prove beyond a reasonable doubt the elements of felony murder based on arson.

*Stermer*, 2011 WL 2507848, at *2-4. This determination was not objectively unreasonable.

Under Michigan law, the elements of first-degree felony murder are (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of the offenses enumerated in the first-degree murder statute. *People v. Carines*, 597 N.W.2d 130, 136 (Mich. 1999); *Stermer*, 2011 WL 2507848, at *3. The felonies specifically enumerated in Mich. Comp. Laws § 750.316(1)(b) include "arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled substance, robbery, carjacking, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping."

A person is guilty of arson if he or she willfully or maliciously burn[s] any dwelling house, either occupied or unoccupied, or the contents thereof . . . ." *Stermer*, 2011 WL 2507848, at *3 (citing Mich. Comp. Laws §750.72). Because there is "rarely direct evidence of the [] lighting of a fire[]," the jury will likely have to make its call on the strength of the circumstantial evidence. *Stermer*, 2011 WL 2507848, at *3 (citing *People v. Nowack*, 614 N.W.2d 78 (Mich. 2000) (additional citation omitted)).

Stermer argues that the evidence presented by the prosecutor was insufficient to establish that the fire contributing to Todd's death was set intentionally or that *she* was the person who intentionally started it. Not so. The evidence presented at trial was more than sufficient to establish the elements of felony murder based on the predicate felony of arson.

Detective Sergeant Scott Leroy of the Michigan State Police Fire Investigation Office—an expert fire investigator—testified that Todd Stermer had significant and extensive burns on his body and that clothing Todd was wearing had a strong odor of petroleum liquid

31

accelerant.  (1/7/10, Trial Tr. at 183-84.)  Det. Leroy also noted that he observed a gas can in the front yard.  (*Id.* at 187-88.)

Cynthia DeLoach, a local gas-station employee, testified that she saw Stermer pumping gas into the back window of her vehicle just hours before the fire.  (1/8/10, Trial Tr. at 7-8.)  DeLoach admitted that she did not see a container, but she surmised there was one in the vehicle because Stermer was not pumping gas into her gas tank.  (*Id.*; 1/8/10, Trial Tr. at 22, 24-25.)

Michigan State Police forensic scientist Troy Ernst received evidence from the scene and tested it.  (1/7/08, Trial Tr. at 135.)  Ernst found gasoline in the container, as well as on the sweatpants, socks, and shirt that Todd was wearing.  (*Id.* at 140, 142.)

Returning to Det. Leroy, he testified that the fire was intentionally set and that it originated in the living room.  (*Id.* at 186-99.)  He made these determinations based on his inspection of the structure and the burn patterns in the home—the most severe of which were in the living room.  (*Id.* at 186, 191.)  Interestingly, though, those severe burn patterns and damage to wall studs, roof sections, and floor sections were a distance from the fireplace, which is where Stermer

32

asserts the fire could have originated from. (*Id*. at 192-94.) In other words, Leroy disproved one of Stermer's competing scenarios for her husband's death as a result of his observation of little damage surrounding the fireplace. (*Id*.) Det. Leroy then eliminated the basement as the point of origin because there was remarkably less damage to the doors and windows in the basement than there was in the first floor living room. (*Id*. at 194.) Therefore, he opined that the origin of the fire was in the living room—away from the fireplace. (*Id*.)

Following his review of the Stermer home, he went on to determine how the fire started. He did so by considering all of the facts surrounding the fire: the time of day, the time the fire happened, the people at the home, their physical condition, and interviewing the first responders. (*Id*. 196-97.) After his investigation, Det. Leroy determined that the fire was intentionally set. (*Id*. at 197, 199.) Indeed, he ruled out accidental sources of the fire: the fireplace, the chimney, appliances, the power panel, the water heater, and the furnace. (*Id*. at 218.)

Det. Leroy also opined that the severity and location of Todd's burn injuries was indicative of him being present at the origin of the

33

fire for a short period of time.  (*Id*. at 204-205.)  And, contrary to Stermer's position, there is nothing in the record to suggest that the absence of carpet or drywall (which would have caused the fire to burn faster) had any bearing on Det. Leroy's opinion that the fire was intentionally set with the aid of an accelerant.

Stermer also argues that no evidence was presented other than to support a conclusion that a fire occurred.  But—arson expert aside—she conveniently ignores the damaging testimony of several other prosecution witnesses, namely, family and friends of the couple.

The Stermers were raising three boys: Trenton Stermer, Trevor Stermer, and Cory Pierce.  Trevor and Cory, 15 and 17 years old at the time of the fire, both testified that they saw Todd in the living room around noon as they were hustled out of the house and sent to the mall by Stermer.  (1/8/10, Trial Tr. at 98, 107, 142, 144.)  Trenton, 13 years old at the time, said his mother "kind of scooted us out the front door." (*Id*. at 126.)  Trevor noted that Stermer told him it would be better if they left without speaking to their dad, who appeared to be asleep.  (*Id*. at 107, 119.)  Cory looked around the corner as he was leaving and saw his dad's leg in the living room and assumed he was on the couch or

chair watching television.  (*Id*. at 149-50.)  Stermer told the boys to go to a movie and gave them money for the outing.  (*Id*. at 107, 122, 152.)

Cory heard Todd yelling at Stermer the night before because "he had found out she was cheating on him" and he wanted a divorce.  (*Id*. at 147-48.)  So when Stermer told Cory to take the other boys to a movie and that she and Todd were going to discuss how to divide things up, Cory just did it.  (*Id*. at 145.)  However, there was no evidence from which to infer that Todd wanted to burn his house down.  Cory noted that his father loved the house and was proud of the work he had done on it.  (*Id*. at 148-49.)  Also, Todd was in very good physical shape and was involved in coaching and was in good spirits just days before he died.  (*Id*. at 99-100; 1/5/10, Trial Tr. at 268, 286.)

Stermer, on the other hand, was in a far different state.  She had been cheating on her husband for at least six months and, despite wanting to end the marriage, she had not moved out of her home nor had she told Todd about her plan.  Stermer complained regularly to her friend and coworker Kate Fox that she was unhappy in her marriage and that she wanted a divorce.  (1/8/10, Trial Tr. at 168-69.)  Stermer was deeply involved in an affair with Chris Williams since the previous

summer.  (*Id.* at 172-74, 176-78.)  She was in constant contact with him, using a cell phone she kept hidden from Todd.  (*Id.* at 176.)  Williams testified that Stermer pursued a relationship with him after they began working together; it continued even after Todd's death.  (*Id.* at 208, 210-13.)  Fox testified that Stermer had a post office box that Fox emptied occasionally to prevent Todd from knowing what was in it.  (*Id.* at 176-77.)  Stermer told Kate that she had spent years imagining ways to get rid of Todd, and had even alarmed Fox to the point where she sent police to the Stermer home once before.  (*Id.* at 170.)  Two months before the fire, Stermer called Kate and said she was holding a shotgun and wanted a reason not to shoot Todd.  (*Id.* at 170-71, 178.)

Testimony from witnesses at the scene of the fire also provided evidence bearing on Stermer's intent to murder Todd.  Neighbors Mike Matheny and Connie Calhoun discovered the fire when they left their home at 3:30 p.m. to go bowling and saw that the Stermer's house was already in flames.  (1/6/10, Trial Tr. at 41-43.)  Once he pulled into the Stermer driveway, Matheny could see tall flames on the whole back of the house.  (*Id.* at 44.)  Steve Leach, the Lawrence Fire Chief was the first fire official on the scene and said there was "a lot of fire," and that

was peculiar at that time of day because fires that get that large usually do so at night because people are asleep and few people are on the roads. (*Id.* at 110-11.) Both Matheny and Calhoun saw Stermer driving her van on the property and watched as shrove the van in a direction away from the road and parked it behind the house. (*Id.* at 45, 48.) Matheny got out of his truck and told Calhoun to call 911 while he ran behind the house to make contact with Stermer, who was not responding to his questions about whether anyone was in the house. (*Id.* at 49.) Stermer finally pointed to Todd lying on the ground and Matheny realized he had missed seeing Todd lying there as he had run back and forth between Stermer and his truck to verify Calhoun had reached emergency dispatchers. (*Id.* at 49-51.) Calhoun testified that Todd was breathing and as she placed her sweater over his lower body, Stermer was "over the top of his chest area up to his face and screaming his name over and over." (*Id.* at 80-81.) Calhoun also said she could see Todd's chest was moving, but could not see his mouth because Stermer was covering his top half with her body and had her face "buried" in him—Calhoun told Stermer she would have to move so Calhoun could see if his airway was blocked. (*Id.* at 81.)

Dr. Richard Moussalli lives in the first house north of the Stermer property; he noted that the homes are between a quarter of a mile and a third of a mile apart. He and his sons saw smoke, heard a strange noise and drove to the Stermer's to investigate. (*Id.* at 98-99.) Once they arrived at the house, Dr. Moussalli helped to move Todd farther away from the burning house and a fuel tank that was nearby. (*Id.* at 102.) Moussalli noticed that Todd's tongue was bruised. (*Id.* at 103.)

Deputy Tony Evans observed that in addition to severe burns, Todd had trauma to his back and a large laceration on the back of his head under which a large pool of blood had formed. (*Id.* at 14-15.) Soon thereafter, Dep. Evens saw the Ford Econoline van on the property was still running and saw blood on the front driver-side bumper. (*Id.* at 20-21.)

Deputy Tom Macyauski confirmed that the van was still running and noted tire impressions left by the van indicating it had been driven off the driveway through the grass area where Todd was originally found. (1/7/10, Trial Tr. at 51, 55.) David Hayhurst from the MSP Forensic Lab testified that he inspected the van on a lift and took samples from six areas on the driver side undercarriage that showed

evidence of blood.  (*Id.* at 120-26.)  DNA processing and comparison with a sample of Todd Stermer's DNA retrieved at an autopsy showed that the blood on the van came from Todd, proving that his wife ran him over.  (*Id.* at 127-29.)

Additionally, Dr. Michael Markey, the forensic pathologist who conducted the autopsy on Todd Stermer testified that Todd died from the extensive thermal injuries and smoke inhalation.  (1/7/10, Trial Tr. at 13.)  He noted that the only unburned skin on Todd's body was on his feet and parts of his legs.  (*Id.* at 6.)  Dr. Markey also noted two shallow depressed linear skull fractures, on each side of Todd's head, and that the skin over each showed a linear laceration.  (*Id.* at 8, 12.)  He said the factures and corresponding lacerations were indicative of blunt force trauma and more consistent with being caused by separate strikes.  (*Id.* at 12-16.)

If the evidence just discussed was not enough, Stermer's actions after the crime provide additional evidence against her.  Dardeda Gordon spent about four days with Stermer in a holding cell and about a month and a half with her in a regular cell; in other words, they were close.  (1/7/10, Trial Tr. at 156-57.)  Gordon said Stermer initially told

her she had not been home when the fire started.  (*Id.* at 158-59.)  But later, Stermer told Gordon that she started the fire with gasoline while he slept and had given him medication and had struck him with object. (*Id.* at 160-61, 177.)  Veronica Travy had been in jail at the same time as defendant and had been in the jail chapel and heard Stermer "apologize" and say she "didn't mean what happened," as others consoled her.  (1/6/10, Trial Tr. at 126, 128, 139.)

Stermer also told several inconsistent stories as to how she got out of the house, what had happened the day of the fire, and denying that she had ever had an affair.  (1/5/10, Trial Tr. at 271-72; 1/6/10, Trial Tr. at 148; 1/8/10, Trial Tr. at 44-51.)  Stermer called Kate from the fire scene asking for a flashlight the night before investigators were coming to look for clues as to the cause of the fire.  She told her friend that she wanted to recover a mug from the dishwasher because she did not want the residue of drugs in the mug to be detected.  (1/8/10, Trial Tr. at 181-82.)

Essentially, Stermer's entire argument is that the jury, and later the Michigan Court of Appeals, made poor credibility determinations. She asserts that their stories were conflicting, laced with

inconsistencies, and just generally not worthy of belief. But Stermer's efforts fall flat. Attacks on witness credibility are challenges to the quality of the prosecution's evidence, not to the sufficiency of the evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000). Who the jury chooses to believe when faced with two conflicting stories is completely within their purview.

In reviewing the record evidence in a light most favorable to the prosecution, the prosecutor clearly presented evidence that would allow a rational jury to determine that Stermer killed her husband and tried to cover it up through a story that vapors on Todd's clothes spontaneously ignited when he passed by an open flame. The Michigan Court of Appeals' decision that there was sufficient evidence to support the murder conviction was, therefore, not objectively unreasonable. *Stermer*, 2011 WL 2507848, at *2-4.

Accordingly, Habeas Claim I should be denied.

41

## II. Stermer's claim that the trial court erred, thereby denying her due process, when it allowed the prosecutor to present expert testimony from the fire expert, Det. Scott Leroy, is not cognizable and meritless.  The state trial court's rejection of this claim was not objectively unreasonable.

In her second claim, Stermer argues that the trial court erred—thereby denying her the right to due process and a fair trial—when it permitted the prosecutor to present testimony from Det. Scott Leroy, the fire expert.  The trial court's error, Stermer asserts, allowed for her conviction to be based on unreliable and incorrect expert testimony.  Not so.

The state trial court considered and rejected this evidentiary claim, holding that its review of the entire record and the pleadings revealed that Stermer was not entitled to relief on any of her claims.  (2/28/14, Van Buren Cir. Ct. Order at 1-3) (citing Mich. Ct. R. 6.504(B)(2)).)  This determination—that there was no error—was not objectively unreasonable.

Moreover, the admission of expert testimony in a state trial presents a question of state law that does not warrant habeas relief unless the evidence violates due process or some other federal constitutional right.  *Keller v. Larkins*, 251 F.3d 408, 419 (3rd Cir.

2001).  In other words, a federal court cannot grant relief on the admission of an expert witness' testimony in the absence of Supreme Court precedent showing that the admission of that expert's testimony violates the federal constitution.  *Wilson v. Parker*, 515 F.3d 682, 705 (6th Cir. 2008).

Here, Stermer has provided no clearly established Supreme Court precedent—let alone a habeas case—holding that the trial court violates a defendant's right to due process by allowing an arson expert to testify in a manner that may or may not be interpreted to be contradictory to a 2011 publication by the National Fire Protection Agency.  (R. 20-2, Br. in Support of Am. Pet., Page ID# 232-48.)  Without any clearly established precedent to point to, Stermer is not entitled to relief.  As the Supreme Court recently reiterated, in order to be entitled to relief, a petitioner must "identif[y] [a] decision from this Court directly on point[;]" it cannot merely be "similar to" Supreme Court precedent. *Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) (per curiam).  "Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court." *Id.* (quoting *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam)).

Accordingly, the state trial court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court law.  Claim II should therefore be denied.

III. **Stermer's claim that the prosecutor committed misconduct several times throughout the trial is meritless, as they did not have such an effect as to require relief. In the alternative any error was harmless. Similarly meritless is Stermer's related claim that her trial counsel was ineffective for failing to object to the alleged misconduct.**

In her third claim, Stermer outlines a litany of alleged misconduct committed by the prosecutor during trial. Specifically, she asserts that the prosecutor improperly stated facts not in evidence, improperly denigrated Stermer by repeatedly calling her a liar, and improperly vouched for the veracity of select witnesses. All of these claims fail because they are either meritless or any error was harmless.

A. **The burden to demonstrate prosecutorial misconduct in a habeas proceeding is high.**

In order to establish prosecutorial misconduct, Stermer must show that the prosecutor's actions or the statements in question "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012). This is a high burden.

When reviewing the statements in question, a habeas court must focus on "the fairness of the trial, not the culpability of the prosecutor."

45

*Smith v. Phillips*, 455 U.S. 209, 219 (1982). The mere presence of prosecutorial misconduct is not enough, "[r]eversal is required only if the prosecutor's misconduct is 'so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant.'" *Lundgren v. Mitchell,* 440 F.3d 754, 778 (6th Cir. 2006) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).

Further, claims of prosecutorial misconduct are subject to harmless error analysis. *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003). Thus, "[e]ven if the prosecutor's conduct was improper or even universally condemned, we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003) (internal quotations and citations omitted). "State courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).

46

Here, the record did not support Stermer's claim that she was entitled to relief because the prosecutor's conduct did not rise to the level of a constitutional violation, or, in the alternative, any error was harmless because there was no substantial or injurious effect on the jury's verdict.

### B.   The individual subclaims of prosecutorial misconduct are meritless.  The state trial court's rejection of the claims was not objectively unreasonable.

In Claim III, Stermer argues that the prosecutor committed misconduct during his closing argument when he argued facts not in evidence, improperly called Stermer a liar, and vouched for the credibility of several prosecution witnesses.  Stermer also asserts that the prosecutor improperly presented perjured testimony from Cory Pierce and allowed it to go uncorrected.  Relatedly, in a portion of Claim IV, Stermer argues that her defense counsel was ineffective for failing to object to the alleged instances of misconduct.

These claims fail, though, because the state trial court reasonably determined that relief was not warranted.  (2/28/14, Van Buren Cir. Ct. Order at 1-3) (citing Mich. Ct. R. 6.504(B)(2))

### 1. The prosecutor properly argued the record evidence. But even if the prosecutor did err, any error was harmless.

It is well established that "prosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005). However, "counsel cannot misstate evidence." *United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001) (citing *United States v. Young*, 470 U.S. 1, 9, n. 7 (1985).

Stermer takes issue with the prosecutor pointing out during his closing that it was "ironic and coincidental that there was a gas can . . . right where the vehicles were[.]" But she has failed to show that this comment was at all improper. After all, there was testimony from Trevor Stermer and Corey Pierce that it was not uncommon for there to be gas cans located near the front of the house. (1/8/10, Trial Tr. at 113, 159.) Other witnesses familiar with the Stermer family and home also made this observation about the gas cans. (*See* 1/12/10, Trial Tr. at 9, 76-77.) So, the fact that gas cans could be found near the front of the house was discussed by multiple witnesses during trial.

That the prosecutor used this evidence to benefit his theory of the case is not improper.  Instead, the prosecutor was reasonably inferring from the evidence that another reason the gas can was near the front of the house was because that's where Stermer inadvertently left it after she doused her husband with gasoline.  This is a logical inference based on the testimony given.  *Bates*, 402 F.3d at 646.

Stermer also takes issue with the prosecutor's comments about her having both of her cell phones in the van when there was no evidence to support that statement.  While the State does not concede that the statement was improper any misstatement by the prosecutor was innocuous at best.

Finally, the prosecutor's statement that the prior fires experienced by Todd Stermer were "not arson" was not improper.  Just as the prosecutor said, Stermer presented no evidence that those previous fires were arson under the criminal statute.  (1/12/10, Trial Tr. at 169-70.) Just because the police did not "exonerate" Todd Stermer as being involved in those fires, it does not mean that he was determined to be responsible for them either.

The prosecutor's statements in each of these instances were logical inferences based on the evidence.  *Bates*, 402 F.3d at 646.  Or, at the very least, did not rise to the level of a constitutional violation of her right to due process.  *Donnelly*, 416 U.S. at 643.

Any error—which the State maintains did not occur—was harmless in any event because of the strength of the forensic evidence as well as the evidence of motive provided by Stermer's best friend, Kate Fox.  As such, she cannot show that any error had a substantial or injurious effect on the outcome of the trial.  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Mason*, 320 F.3d at 635.

This portion of Claim III should be denied.

> **2.    The prosecutor did not improperly denigrate Stermer during his closing argument.  But even if the prosecutor did err, any error was harmless.**

In a portion of Claim III, Stermer argues that the prosecutor improperly called her a liar numerous times during his closing argument.  She asserts that this was an improper attack on her character.  Not so.

A prosecutor may argue from the facts that a witness is (or is not) worthy of belief.  *Portuondo v. Agard*, 529 U.S. 61, 69 (2000); *see also*

*Cristini v. McKee*, 526 F.3d 888, 902 (6th Cir. 2008). And again, "prosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates*, 402 F.3d at 646. That is what the prosecutor did here.

When reviewed in context, the prosecutor was reminding the jury that Stermer not only had every reason to lie because she had been charged with a very serious crime, but she also made several contradicting statements about how everything occurred the day of the fire. For example, she lied about Todd saying that no one else would have her when he was—according to Stermer—engulfed in flames in the living room. (1/12/10, Trial Tr. at 112.) She denied having an affair, even though there was evidence presented that Stermer was involved with her coworker, Chris Williams. (*Id.*) These are lies she told to police officers and to the person handling Stermer's insurance claim from Todd's death. (*Id.* at 112-13.)

The prosecutor also insisted that Stermer lied about getting gas in a container prior to the fire. (*Id.* at 113.) Indeed, he implored the jury to remember the testimony of Cindy DeLoach, the gas station

51

attendant, who said that Stermer had the nozzle in her hand and located at the back of her car where the fuel tank was not located.  (*Id.*) He also argued to the jury that Stermer was lying when she told the police that this was a murder/suicide attempt.  (*Id.*)  It would be absurd to think that Todd would set himself on fire, then try to kill Stermer who, according to her, was located on an entirely different floor than him.  (*Id.*)  Indeed, if it was going to be a murder/suicide, the murder would typically happen first.  (*Id.* at 113-14.)  Further, the prosecutor pointed out that when Stermer was asked by the police to tell them everything she did that day, she conveniently left out her trip to the gas station.  (*Id.* at 115.)  If her trip there was so innocent, why would she omit it?

After a bit of time to think about her story, it began to change. Instead of conveying her initial story, Stermer said she packed a little, laid down in her room reading up on a medication one of her children was taking, and then got Todd a glass of juice before the fire.  (*Id.* at 116.)  Telling her children to get out of the house because they were going to discuss divorce does not match up with Stermer's story.  (*Id.*)

The prosecutor correctly painted a picture of Stermer as someone who could not keep her story straight and was simply lying about what happened the day her husband died.  Based on the inconsistencies in Stermer's stories, the prosecutor's comments about her being a liar are well-founded.  Again, a prosecutor may argue from the facts that a witness is not worthy of belief.  *Portuondo*, 529 U.S. at 69; *see also Cristini*, 526 F.3d at 902.

The prosecutor's argument here was not an improper attack on Stermer's character, it was entirely proper and did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly*, 416 U.S. at 643 (1974).  Further, even if there was error, it was harmless due to the strength of the forensic evidence as well as the evidence of motive provided by Stermer's best friend, Kate Fox.  As such, she cannot show that any error had a substantial or injurious effect on the outcome of the trial.  *Brecht*, 507 U.S. at 637-38; *Mason*, 320 F.3d at 635.

This portion of Claim III should be denied.

### 3. The prosecutor did not improperly vouch for the veracity of certain witnesses.  But even if the prosecutor did err, any error was harmless.

The prosecutor, or an agent thereof, may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 999) (internal citations omitted). Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).

Once more, it is well established in this circuit that "prosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates*, 402 F.3d at 646.

In a portion of Claim III, Stermer argues that the prosecutor committed misconduct when he vouched for the veracity of Cindy DeLoach (gas station attendant), Mike Matheny and Connie Calhoun (neighbors of the Stermers), and Veronica Tracy and Dardeda Gordon (cellmates of Stermer) when he said during closing that they had no reason to lie.

This does not qualify as improper vouching. The prosecutor gave no *personal* opinion about the credibility of these witnesses or about Stermer's guilt. Nor did he imply that he knew of facts that had not been introduced into evidence. Rather, the prosecutor presented to the jury the reason why it should believe the testimonies of DeLoach, Matheny, Calhoun, Tracy, and Gordon—over the defense theory—and it is because those witnesses had no incentive to tell the jury anything other than the truth. (1/12/10, Trial Tr. at 109-19.)

Accordingly, the prosecutor did not improperly vouch for or bolster the credibility of his own witnesses.  He was arguing to the jurors why they should believe them, and not Stermer's theory of "I didn't do it." The state court of appeals' rejection of this portion of Claim III was not contrary to, or an unreasonable application of, clearly established Supreme Court law.

The prosecutor's comments did not constitute improper vouching. However, even if this Court finds the prosecutor's questions to be improper, and by extension that there was prosecutorial misconduct, then any error was not so flagrant or egregious as to render the entire trial fundamentally unfair in light of the strong evidence against Stermer.  *Mason*, 320 F.3d at 635.  Additionally, the Sixth Circuit has never granted habeas relief for improper vouching.  *Byrd v. Collins*, 209 F.3d 486, 537 and n. 43 (6th Cir. 2000).  This case does not support such a finding.

Further, the trial court properly instructed the jurors that the arguments of counsel are not evidence, that their verdict should only be based on the evidence presented during trial, and that in determining credibility, they should consider whether someone would have a reason

56

to lie.  (1/6/10, Trial Tr. at 223, 226-27; 1/12/10, Trial Tr. at 187-89.)  "A jury is presumed to follow its instructions."  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Accordingly, any error—which the State maintains did not occur—was harmless and did not have a substantial or injurious effect on the verdict.  *Brecht*, 507 U.S. at 637-38.  This portion of Claim III should be denied.

> ### 4.    The prosecutor never presented perjured testimony.  But even if the prosecutor did err, any error was harmless.

In a portion of Claim III, Stermer argues that the prosecutor knowingly presented false testimony from Cory Pierce—one of the three children living in the Stermer house.

With respect to a claim that the prosecutor knowingly presented perjured testimony, the Supreme Court has been clear.  The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States,* 405 U.S. 150, 153 (1972) (citation omitted).  The result is the same when the State allows false evidence to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  A habeas petitioner bears the burden of proving that the disputed testimony constituted perjury.

*Id.* at 270.  To prevail on a claim that the prosecutor used false testimony, a petitioner must show that (1) the testimony was actually false, (2) that the false statements were material, and (3) that the prosecutor knew the testimony was false.  *Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1998).

However, a habeas petitioner must also show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony.  *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).  Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor.  *Coe*, 161 F. 3d at 343.  Additionally, the fact that a witness contradicts himself or changes his story does not establish perjury either.  *Malcum v. Burt*, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003).  A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial.  *Id.*

The testimony Stermer takes issue with is when Cory Pierce testified that Todd may not have been awake when he and his brothers left for the movies and when he said that Stermer had two phones, one

of which no one knew about.  (*See* R. 20-2, Br. in Support of Am. Pet.,
Page ID# 252.)  She asserts that this testimony contradicts previous
statements Cory made wherein he said Todd was awake at the time
they left for the movies and that Stermer had a regular phone and a
work phone.  (*Id.*)

Stermer cannot show that Cory's testimony was perjured, instead
of merely being inconsistent.

Regarding whether or not Todd was awake when the boys left for
the movie, Cory's testimony was that he just saw a part of his dad's
body before they left, he could not tell whether or not Todd was
sleeping, but as far as he knew, his dad was watching TV.  (1/8/10, Trial
Tr. at 149-50.)  By Cory noting that Todd was watching TV is indicative
of Todd actually being awake, which is precisely what Cory previously
stated under oath.  (*See* R. 20-2, Br. in Support of Am. Pet., Page ID#
252.)  Even if it was "inconsistent" for Cory to say that he could not tell
if Todd was awake, inconsistencies in witness testimony do not
establish the knowing use of false testimony by the prosecutor.  *Coe*,
161 F. 3d at 343.

And regarding whether or not Cory committed perjury when he testified that Stermer had a home cell phone and a secret cell phone, Stermer cannot show she is entitled to relief.  Indeed, the cell phone Cory thought was for Stermer's "work," very well could have been the secret cell phone that Stermer was attempting to keep hidden.

However, even if Stermer could show that Cory's testimony was perjured—which she cannot do—the claims still fail because any error was harmless in light of Kate Fox's motive testimony and the strength of the forensic evidence.  *Brecht*, 507 U.S. at 637-38.  This portion of Claim III should be denied.

### C.  Stermer's related claim of ineffective assistance of counsel similarly fails.

To the extent Stermer argues in a portion of Habeas Claim IV that her counsel was ineffective for failing to object to the alleged misconduct, her claim must fail because the underlying claims themselves are meritless as just outlined.  Therefore, any objection would have been futile—either because there was no error for counsel to object to, or because no prejudice would have resulted from the failure make the objection.  It is well established that counsel cannot be

deemed deficient for failing to make meritless objections. *United States v. Harris*, 204 F.3d 681, 683 (6th Cir. 2000).

For the preceding reasons, Claim III should be denied, along with its related ineffective-assistance-of-counsel claim found in Claim IV.

**IV.   To show ineffective assistance of counsel, a habeas petitioner must show that trial counsel performed deficiently and that counsel's performance resulted in prejudice.  Where Stermer has failed to demonstrate that the state trial court unreasonably rejected this claim, relief is not warranted.**

In her fourth claim, Stermer argues that her counsel was ineffective for several reasons.  Specifically, she asserts that her counsel was ineffective for (1) failing to investigate and present expert testimony to counter that presented by the prosecution, (2) failing to investigate and adequately perform cross-examination of witnesses, (3) failing to object to the testimony presented by the prosecutor's expert witness, and (4) coercing her into not testifying on her own behalf.  The state trial court's rejection of this claim was not objectively unreasonable.

### A.   *Strickland* test.

Claims of ineffective assistance of counsel are governed by the law set forth in *Strickland v. Washington,* 466 U.S. 668 (1984).

Under *Strickland,* a petitioner must establish that her counsel's performance was deficient *and* that she was prejudiced by her counsel's deficient performance.  *Id*. at 687-688 ("there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the

same order or even to address both components of the inquiry if the [petitioner] makes an insufficient showing on one." *Strickland*, 466 U.S. at 697).  Regarding the performance prong, judicial scrutiny of counsel's performance must be "highly deferential" and a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Beyond the general requirement of reasonableness, "specific guidelines are not appropriate." *Id.* at 688.  "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions . . . ." *Id.* at 688-689 (It is rare that constitutionally competent representation will require any one technique or approach. *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (citing *Harrington v. Richter,* 562 U.S. 86, 89 (2011)).  The Supreme Court has said that there "are countless ways to provide effective assistance in any given case" and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689.

Regarding the prejudice prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Notably, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

The Supreme Court has said that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010).  In other words, "under de novo review, the standard for judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105.

Moreover, because the *Strickland* standard is a general standard, a State court "has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Renico v. Lett*, 130 S. Ct. 1855, 1864 (2010); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

According to the Supreme Court, "[t]he standards created by *Strickland* and § 2254 are both 'highly deferential,'" and "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 689); *Richter*, 562 U.S. at 105 (quoting *Knowles*, 556 U.S. at 113).

### B.  Stermer's claim that her counsel was ineffective for failing to adequately prepare for the case, present expert testimony to counter that presented by the prosecution, failing to object to the testimony presented by the prosecutor's expert witness, and coercing her into not testifying on her own behalf is meritless.

In her fourth claim, Stermer argues that her defense counsel was ineffective throughout the course of her trial.  First in preparing for the case, second in failing to obtain an expert witness to counter that of the prosecution, third in failing to object to the content of the prosecutor's expert witness, and fourth in coercing her not to take the stand in her own defense.

The state trial court considered and rejected this claim during Stermer's collateral appeal, finding that there was no basis for relief. (2/28/14, Van Buren Cir. Ct. Order at 1-3) (citing Mich. Ct. R. 6.504(B)(2)).)  This determination was not objectively unreasonable.

1. **Defense counsel's cross-examination of witnesses was not indicative of a failure to adequately prepare for trial.**

Stermer first challenges her counsel's preparation for trial by arguing that he should have more thoroughly cross-examined Cory Pierce about whether or not Todd was awake when the boys left the morning of the fire. (R. 20-2, Br. in Support of Am. Pet., Page ID# 260-61.) This claim fails.

Decisions about "whether to engage in cross-examination, and if so to what extent and in what manner, are . . . . strategic in nature" and generally will not support an ineffective assistance claim. *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997). Most cross-examinations can be improved, but if that "were the standard of constitutional effectiveness, few would be the counsel whose performance [pass] m

uster." *Willis v. United States*, 87 F.3d 1004, 1006 (8th Cir. 1996); *United States v. Munoz*, 605 F.3d 359, 381 (6th Cir. 2010). To establish such an error that would require the extraordinary remedy of habeas relief, Stermer must show that certain impeachment and questioning—

or lack thereof—likely would have made a difference in the outcome of her trial.  *See Davis v. Booker*, 589 F.3d 302, 309 (6th Cir. 2009).

Despite Stermer's fervent argument to the contrary, defense counsel *did* question Cory about where Todd was and what he was doing when Cory and the other boys left the house the morning of the fire.  Cory responded that Todd "was sitting in the living room."  (1/8/10, Trial Tr. at 157-58.)  As discussed above, by Cory noting that Todd was watching TV in the living room is indicative of Todd actually being awake.  (*Id.* at 149-50, 157-58.)  So, Stermer's claim that counsel did not adequately impeach Cory is simply not accurate.

Defense counsel may not have questioned these witnesses in the exact way Stermer thinks he should have (using hindsight, of course), or the way another attorney may have.  But it is well-established that there "are countless ways to provide effective assistance in any given case" and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."  *Strickland*, 466 U.S. at 689.  Under *Strickland*, a court must presume that decisions by counsel as to how to question witnesses are matters of trial strategy.  *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Even assuming Stermer could show that her counsel performed deficiently by failing to further cross-examine Cory, she cannot show that the failure to do so resulted in any prejudice to her. Cory aside, there was plenty of other damning pieces of evidence against Stermer. Namely, the forensic evidence and the evidence of motive provided by Stermer's friend, Kate Fox. As a result, Stermer cannot meet the second *Strickland* prong of prejudice. *Strickland*, 466 U.S. at 689.

The state court's rejection of this claim was not objectively unreasonable. This portion of Claim IV should be denied.

> **2. Defense counsel's failure to challenge the prosecutor's fire expert and to call a fire expert on behalf of the defense were not deficient, nor did those actions result in prejudice.**

In a portion of Claim IV, Stermer argues that defense counsel should have further examined the scientific method that Det. Scott Leroy was using to opine about the cause and origin of the fire and also should have hired an expert to testify for the defense that the method used by Det. Leroy was flawed. (R. 20-2, Br. in Support of Am. Pet., Page ID# 260-61.) This claim is meritless.

"Although attorneys can always do more in preparation for a trial," the failure to do so does not mean that they are ineffective. *Mason v. Mitchell*, 320 F.3d 604, 618 (6th Cir. 2003). "The focus in failure-to-investigate claims . . . is the reasonableness of the investigation (or lack thereof)." *English v. Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010) (citing *Wiggins v. Smith*, 539 U.S. 510, 527 (2003)). And the duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) (citing *Strickland*, 466 U.S. at 688); *English*, 602 F.3d 714, 726 (6th Cir. 2010). Attorneys "may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

Further, a habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been helpful to her defense.

*Hutchison*, 303 F.3d at 748.  Thus, "a petition for habeas corpus relief based on counsel's failure to call or interview witnesses must present this evidence in the form of the actual testimony by the witness or affidavits."  *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991); *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007); *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000).

     Stermer cannot meet her burden here.

     First, she cannot show that her counsel was derelict in his investigation in any way.  In her pleadings to the state courts and to this Court, Stermer goes to great lengths to explain the significance of the 2011 publication by the National Fire Protection Agency (NFPA 921), how courts have found that it is a reliable source for fire investigators, and how Det. Scott Leroy's investigation did not follow that agency's methodology on cause and origin.  (R. 20-2, Br. in Support of Am. Pet., Page ID# 236-47, 259.)  Because of that, Det. Leroy's testimony was not credible or reliable.  She also argues that the state of construction the house was in would have had a marked affect on the spread of the fire.

The problem with these arguments is that Stermer has provided little to support them. Importantly, Stermer has provided no affidavits from anyone from the NFPA verifying that Det. Leroy's methods were unreliable or from anyone versed in NFPA standards. Nor has she provided an affidavit from an expert that would testify to the effect fire would have on a home that was "under construction" like the Stermer's house. All Stermer presented was the text of portions of the NFPA publication, statements about how it's been accepted in several courts as the national standard, and documents regarding house construction—all of which were in the pleading.

In the absence of such evidence, this Court should presume that counsel's decision not to object to Det. Leroy's qualifications and not to attack his expert opinion with the NFPA 921 fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Bell v. Cone*, 535 U.S. 685, 702 (2002). This is especially true considering the dozens of times Det. Leroy was qualified as an expert in other trials. (1/7/10, Trial Tr. at 180-81.)

Second, even if Stermer could show deficient performance—a point the State vehemently contests because she has presented *no*

71

affidavits to support it—she cannot establish that she suffered any prejudice as a result of that error.  Again, there is no evidence as to what evidence would have been presented, who would have provided that evidence, or if they would have testified at all.  Without such information Stermer has not met her burden.

To the extent Stermer argues that counsel was ineffective for failing to contact and call a fire expert as a witness, she is similarly not entitled to relief.  Even assuming counsel failed to contact an expert familiar with NFPA methods or with a background in construction-based fires—a point the State does not concede, because there is no evidence to support it—without an affidavit from the expert outlining the content of their proposed testimony, Stermer cannot show she was prejudiced.  *Hutchison*, 303 F.3d at 748; *Ashimi*, 932 F.2d at 650; *Harrison*, 496 F.3d at 428; *Dows*, 211 F.3d at 486.

Because Stermer has failed to support her claim with adequate evidence, the trial court's determination that she had not met her burden of establishing ineffective assistance was not objectively unreasonable.  (2/28/14, Van Buren Cir. Ct. Order at 1-3.)  This portion of Claim IV should be denied.

### 3. Defense counsel did not coerce Stermer into giving up her right to testify on her own behalf.

In another portion of Claim IV, Stermer argues that she was coerced by her trial counsel into not taking the stand to testify. Specifically, Stermer argues that she wanted to "tell her side of the story," but her counsel "refused to let her testify." (R. 20-2, Br. in Support of Am. Pet., Page ID# 263.) This claim fails.

It is well established that defendants in a criminal case have a constitutional right to testify on their own behalf. *Rock v. Arkansas*, 483 U.S. 44, 52-53, n.10 (1987); *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir. 1997). When counsel strategically determines that a defendant should not testify, that defendant's assent is presumed. *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000). The trial court has no duty to inquire *sua sponte* into the defendant's desire, or lack thereof, to testify, and it need not ask if the defendant knowingly, voluntarily, or intelligently waives her right to testify. *United States v. Webber*, 208 F.3d 545, 551-52 (6th Cir. 2000). The trial court also has no obligation to address the defendant and explain that he has the right to testify. *Siciliano v. Vose*, 834 F.2d 29, 30 (1st Cir. 1987).

Here, Stermer did not alert the trial court at the time the defense rested—or at any other time that she can point to—that she wanted to testify.  As a result, her failure to do so constitutes a waiver of that right.  *Webber*, 208 F.3d at 551.  And because the record is devoid of any indication that Stermer disagreed with or was concerned about her counsel's decision to rest the case at the point he did, she cannot overcome the presumption that she willingly agreed to counsel's advice not to testify.  *Gonzales*, 233 F.3d at 357.  Therefore, Stermer can satisfy neither *Strickland* prong.  *Strickland,* 466 U.S. at 687-88.

Further, Stermer cites no evidentiary support for her claim that she wanted to testify at trial.  Indeed, in her petition to this Court she merely announces that she wanted to testify and cites case law.  When a petitioner makes conclusory allegations without any evidentiary support, relief should be denied.  *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006).

Because the evidence suggests that Stermer merely acquiesced to defense counsel's decision to rest without calling her to testify, the state court's rejection of this claim was not contrary to, or an unreasonable

application of, clearly established Supreme Court law.  This portion of

Habeas Claim IV should be denied.

## V.   Stermer's claim that she was denied the effective assistance of counsel during her direct appeal is meritless.

In her fifth claim, Stermer argues that she was denied the effective assistance of appellate counsel when her counsel on direct appeal failed to raise the claims that she raised herself in her motion for relief from judgment.  She seemingly suggests that these claims would have been "dead-bang winners."  (R. 20-2, Br. in Support of Am. Pet., Page ID# 266-71.)  Not so.

Ineffective assistance of appellate counsel claims are analyzed under the test established in *Strickland v. Washington*.  Like with ineffective-assistance-of-trial-counsel claims, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  *Id.* Second, the defendant must show that the deficient performance prejudiced the defense.  *Id.*  This legal standard is "highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

In adjudicating the first prong of the standard, the court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  The

court should recognize that counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90.  The Sixth Amendment is violated only if counsel's acts or omissions "were outside the wide range of professionally competent assistance."  Strategic choices after thorough investigation of law and facts relevant to plausible options are "virtually unchallengeable." *Id.* at 690.

In the case of appellate counsel, a petitioner has no constitutional right to have every nonfrivolous issue raised on appeal.  *Jones v. Barnes*, 463 U.S. 745, 754 (1983).  Appellate counsel acts within the fair range of professional assistance when counsel chooses not to assert weak or unsupported issues on appeal.  *Murray v. Carrier*, 477 U.S. 478, 536 (1986).

Tactical choices regarding issues on appeal are properly left to the sound judgment of counsel.  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  "'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of appellate advocacy." *Carrier*, 477 U.S.

at 536 (quoting *Barnes*, 463 U.S. at 751-752).  Where appellate counsel is charged with ineffectiveness for failure to raise particular claims, "it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  To overcome the presumption of competence of appellate counsel in these circumstances, a petitioner must show that the omitted issues were "clearly stronger" than those counsel chose to assert.  *Id.*

As for prejudice, the court focuses on whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). And "[t]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Consequently, counsel's failure to raise an issue on appeal is ineffective assistance "only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005).

Here, Stermer has established neither prong of *Strickland*.  On direct appeal, appellate counsel raised two solid claims of error

regarding sufficiency of the evidence and improper bindover.  These claims ultimately did not succeed, but they were substantial.

Also, we know from the trial court's adjudication of Stermer's motion for relief from judgment that none of the claims she raised during her collateral appeal would have altered outcome of her direct appeal.  (2/28/14, Van Buren Cir. Ct. Order at 1-3.)  "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'"  *Shaneburger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

For the reasons stated herein, Stermer's claim that her appellate counsel was ineffective for failing to raise meritless claims must fail. Relief on Claim V should be denied.

## CONCLUSION

The state courts' rejection of Stermer's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. Stermer was "entitled to a fair trial but not a perfect one." *Lutwak v. United States*, 344 U.S. 604, 619 (1953); *see also United States v. Hajal*, 555 F.2d 558, 569 (6th Cir. 1977) ("[W]e have yet to review a perfect jury trial."). The state-court decisions in this case were not "so lacking in justification" that they resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. The formidable threshold for granting habeas relief has not been met because fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough*, 541 U.S. at 664. Consequently, habeas relief should be denied.

Additionally, the State opposes any requests for bond, oral argument, or any other relief, including a certificate of appealability. And the State asserts that Stermer is not entitled to habeas relief because she has not established that the alleged errors had a

80

substantial and injurious effect on the verdict in this matter.  *See*

*Brecht*, 507 U.S. at 637-38.

The State also contends that Stermer has not demonstrated

entitlement to discovery.  Unlike typical civil litigants, "[h]abeas

petitioners have no right to automatic discovery."  *Stanford v. Parker*,

266 F.3d 442, 460 (6th Cir. 2001).  Rule 6(a) permits district courts to

authorize discovery in habeas corpus proceedings under the Federal

Rules of Civil Procedure only "for good cause."  R. Governing 2254 Cases

in the U.S. Dist. Cts. 6(a).  "Rule 6 embodies the principle that a court

must provide discovery in a habeas proceeding only 'where specific

allegations before the court show reason to believe that the petitioner

may, if the facts are fully developed, be able to demonstrate that he is . .

. entitled to relief.'"  *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir.

2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)).  "Rule 6

does not 'sanction fishing expeditions based on a petitioner's conclusory

allegations.' "  *Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120

F.3d 551, 562 (5th Cir. 1997)); Habeas Rule 6(a).  "Conclusory

allegations are not enough to warrant discovery under Rule 6; the

petitioner must set forth specific allegations of fact."  *Williams*, 380 F.3d

at 974 (internal quotation marks and citation omitted).  Stermer has

not met this burden.

If this Court denies the petition, the State asserts that Stermer is

also not entitled to a certificate of appealability (COA) so as to proceed

further.  In order to obtain a COA, a petitioner must make "a

substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  To demonstrate this denial, the petitioner is required to

show that reasonable jurists could debate whether, or agree that, the

petition should have been resolved in a different manner, or that the

issues presented were adequate to deserve encouragement to proceed

further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *see also Miller-*

*El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling

standard, a petitioner must 'sho[w] that reasonable jurists could debate

whether (or, for that matter, agree that) the petition should have been

resolved in a different manner or that the issues presented were

adequate to deserve encouragement to proceed further.") (citations

omitted).

When a district court rejects a habeas petitioner's constitutional

claims on the merits, the petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Slack*, 529 U.S. at 483-84. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.

When a plain procedural bar is present, and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

## RELIEF

For the reasons stated above, this Court should deny the petition.

The Court should also deny Stermer any requested discovery,

evidentiary hearings, bond, oral argument, and any other relief she

seeks in this action, including a certificate of appealability.

Respectfully submitted,

Bill Schuette
Attorney General

<u>s/Andrea M. Christensen-Brown</u>

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
christensena1@michigan.gov
P71776

Dated: September 16, 2016
AG#2012-0024414-A/Stermer, Linda/Habeas Answer

84

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2016, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

HONORABLE ARTHUR J. TARNOW
MAGISTRATE JUDGE DAVID R. GRAND
SHELDON HALPERN, ATTORNEY FOR PETITIONER

Respectfully submitted,

Bill Schuette
Attorney General

s/Andrea M. Christensen-Brown

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
christensena1@michigan.gov
P71776

85