UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

LINDA STERMER,

       Petitioner,

-v-                              Case No. 2:12-CV-14013

                                       HON. ARTHUR J. TARNOW

MILLICENT WARREN,

       Respondent.

_____/

**PETITIONER'S BRIEF IN SUPPORT OF**

**MOTION FOR RELEASE PENDING DECISION**

SHELDON HALPERN (P14560)
Attorney for Petitioner Stermer
26339 Woodward Avenue
Huntington Woods, Michigan 48070
(248) 554-0400 Fax: (248) 554-0411

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................i

INDEX OF AUTHORITIES.............................................................................................ii

STATEMENT OF CASE ................................................................................................1

ARGUMENT ................................................................................................................2

I.   PETITIONER PRESENTS SUBSTANTIAL QUESTIONS OF LAW AND EXCEPTIONAL
     CIRCUMSTANCES MERITING RELEASE IN THE INTERESTS OF JUSTICE................2

   A) Petitioner presents a substantial federal claim that is clear and readily evident
      from the present record. ...............................................................................3

      1)   Habeas relief warranted where under Michigan law fire was accidental ........4

      2)   Habeas relief merited where state court made unreasonable determination
           of facts in light of the record. ...................................................................5

      3)   Habeas relief merited where trial counsel allowed prejudicial, misleading and
           fundamentally unfair opinion evidence to be admitted. ...........................10

   B) Exceptional Circumstances ...........................................................................14

   RELIEF REQUESTED...............................................................................................18

i

## INDEX OF AUTHORITIES

**Cases**

*Aronson v. May,* (1964, US), 85 S. Ct. 3, 13 L. Ed. 2d 6 ...............................................2

*Calley v. Callaway*, 496 F.2d 701 (5th Cir. 1974). .......................................................2

*Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985) .........................................2

*Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990) .........................................................3

*Gilliland v. Stynchcombe,* No. C76-376 (N.D.Ga. June 4, 1976) .................................14

*Glynn v. Donnelly*, 470 F.2d 95 (1st Cir. 1972); ............................................................2

*Han Tak Lee v. Houtzdale Sci,* 798 F. 3d 159 (3rd Cir, 2015) ......................................14

*In re Wainwright*, 518 F.2d 173 (5th Cir. 1975)..............................................................2

*Iuteri v. Nardoza,* 662 F.2d [159] at 161 [ (2nd Cir. 1981)..........................................3

*Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986))....................................................3

*Nishikawa v Dulles,* 356 U.S. 129, 136 (1958)...............................................................5

*People v Barber*, 255 Mich App 288, 294-295 (2003)....................................................4

*People v Lee*, 231 Mich 607, 612; 204 NW 742 (1925); ................................................4

*People v Nowack*, 462 Mich 392 at 409-410 (2000);.....................................................4

*People v Smock*, 63 Mich App 610, 616 (1975) *rev'd on other grounds* 399 Mich 282
   (1976)..............................................................................................................................4

*People v Williams*, 114 Mich App 186 (1982)...............................................................4

*Pethtel v. Attorney General of Indiana,* 704 F. Supp. 166, 169 (N.D.Ind. 1989).............3

*Puertas v. Overton*, 272 F. Supp. 2d 621 (E.D. Mich. 2003). ......................................15

*U.S. v. Boston*, 2008 WL 4661026 (W.D.N.C. 2008) ..................................................15

*U.S. v. Burnett,* 76 F.Supp.2d 846 (E. D.Tenn. 1999); .................................................15

*U.S. v. Cantrell,* 888 F.Supp. 1055 (D.Nev. 1995) ......................................................15

*U.S. v. DiSomma*, 951 F.2d 494 (2d Cir. 1991); .........................................................15

*U.S. v. Herrera-Soto*, 961 F.2d 645 (7th Cir. 1992); ...................................................15

*U.S. v. Jones*, 979 F.2d 804 (10th Cir. 1992); ..........................................................15

*U.S. v. Kenney,* 2009 WL 5217031 (D. Me. 2009) ......................................................15

*U.S. v. Mostrom*, 11 F.3d 93 (8th Cir. 1993); ...........................................................15

*U.S. v. Price*, 2008 WL 215811 (W.D.N.C. 2008). ......................................................15

*U.S. v. Rentas*, 2009 WL 3444943 (S.D.N.Y. 2009).....................................................15

*United States v. Davis,* 992 F.2d 635 (6th Cir.1993), ..................................................14

*United States v. Hill*, 827 F.Supp. 1354, 1356-58 (W.D.Tenn.1993) ...........................14

## Statutes

28 U.S.C. § 2254 ...............................................................................................2

28 U.S.C. §2254 .................................................................................................2

MCL 750.72 .....................................................................................................4

## Other Authorities

*Fire and Arson Scene Evidence: A Guide for Public Safety Personnel* June 2000 ..........13

M Crim JI 31.1 ...................................................................................................4

**STATEMENT OF CASE**

In supplement to the statement of the case provided in the Brief in Support of Petition for Habeas Corpus, this brief is to familiarize the Court with Petitioner.

Linda Kay Stermer is currently incarcerated at the Huron Valley Complex located in Ypsilanti, Michigan.  She is serving a life sentence for felony murder during an arson and has been listed as a security level classification of II.

The policy behind classification levels maintained by the Michigan Department of Corrections  has been described as being:

> The system used by the department to determine the appropriate prison security level of a prisoner. Levels range from I (minimum) to V (maximum). Generally, the prisoner's institutional behavior, length of sentence and escape potential determine the appropriate level.  http://www.michigan.gov/corrections/0,4551,7-119--17490--,00.html

Level II represents a lower security level and minimal escape potential for Petitioner Stermer.   Previously, Petitioner Stermer was released on bond pending trial, paying back the person who posted bond, and appeared as required to all court proceedings.  (See Letter from Chris Fayling, found in the Appendix – Item 1).

For a prisoner serving a life sentence, Level II security classification also reflects upon the absence of prison misconduct.  Further facts will be provided in the following argument.

1

**ARGUMENT**

I.   **PETITIONER PRESENTS SUBSTANTIAL QUESTIONS OF LAW AND EXCEPTIONAL CIRCUMSTANCES MERITING RELEASE IN THE INTERESTS OF JUSTICE.**

A district court has authority to release a state prisoner pending determination of his or her petition for writ of habeas corpus under 28 U.S.C. §2254. *Aronson v. May,* (1964, US), 85 S. Ct. 3, 13 L. Ed. 2d 6. However, it is appropriate to exercise that authority only upon a showing that a petitioner's claim is both substantial and clear on the merits. *Glynn v. Donnelly*, 470 F.2d 95 (1st Cir. 1972); *Calley v. Callaway*, 496 F.2d 701 (5th Cir. 1974).

In order to receive bail pending a decision on the merits, petitioners must be able to show not only a substantial claim of law based on the facts surrounding the petition but also the existence of "some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice." *Aronson v. May*, 85 S.Ct. 3, 5, 13 L.Ed.2d 6, 9 (1964) (Douglas, J., in chambers).

Under 28 U.S.C. § 2254 this Court has "inherent power to admit applicants to bail pending the decision of their cases, but a power to be exercised sparingly." *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985) (citing *In re Wainwright*, 518 F.2d 173 (5th Cir. 1975) (per curiam)).

In order to obtain release on bail pending a decision of her petition for a writ of habeas corpus, Mrs. Stermer must show "not only a substantial federal claim that presents not merely a clear case on the law, but a clear, and readily evident, case on the facts." *Pethtel v. Attorney General of Indiana,* 704 F. Supp. 166, 169 (N.D.Ind.

2

1989) (quoting *Glynn v. Donnelly,* 470 F.2d 95, 98 (1st Cir. 1972)). Further, Mrs. Stermer must establish the existence of some circumstance which makes the request for bail exceptional and deserving of special treatment in the interest of justice. See *Pethtel*, 704 F. Supp. at 169 (citing *Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986)).

In *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990) the 6th Circuit stated:

> In order to receive bail pending a decision on the merits, prisoners must be able to show not only a substantial claim of law based on the facts surrounding the petition but also the existence of "some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice." *Aronson v. May*, 85 S.Ct. 3, 5, 13, L.Ed.2d 6, 9 (1964) (Douglas, J., in chambers); see *Martin v. Solem*, 801 F.2d [324] at 329-330 [(8th Cir. 1986)]; *Iuteri v. Nardoza,* 662 F.2d [159] at 161 [ (2nd Cir. 1981) ].

Petitioner submits she meets both requirements meriting release pending a decision by this Court.

## A)   Petitioner presents a substantial federal claim that is clear and readily evident from the present record.

This Court is presented with a Petitioner who was convicted of arson by use of inherently unreliable evidence in the form of cause and origin opinion testimony that was inadmissible: based upon nothing more than a hunch devoid of the requisite scientific analytical approach required for admissibility in the first place.

In order to sustain a conviction in Michigan for arson of a dwelling house, the prosecution must prove three elements beyond a reasonable doubt: (1) defendant burned a building or structure, (2) the building or structure was a dwelling house, and

3

(3) when defendant committed the act, she either intended to burn the dwelling or any of its contents, or she intentionally committed an act that she knew had a very significant risk of burning the dwelling or its contents and disregarded that risk. MCL 750.72; *People v Nowack*, 462 Mich 392 at 409-410 (2000); *People v Barber*, 255 Mich App 288, 294-295 (2003). When the evidence only demonstrates that a fire occurred, there is a presumption that the fire was caused accidentally. *People v Lee*, 231 Mich 607, 612; 204 NW 742 (1925); *People v Williams*, 114 Mich App 186, 193; 318 NW2d 671 (1982); M Crim JI 31.1.

As a result of these specific elements, it is insufficient to simply show the premises were burned as that circumstance only permits the presumption that the fire was accidentally caused. *People v Williams*, 114 Mich App 186 (1982). Similarly, 'mere opportunity' to commit arson is also insufficient as proof; the prosecutor must also show the defendant willfully caused the burning. *People v Smock*, 63 Mich App 610, 616 (1975) *rev'd on other grounds* 399 Mich 282 (1976).

### 1)   Habeas relief warranted where under Michigan law the fire was accidental.

With the elements necessary to convict considered, the state never proved the elements of an intentional burning with the requisite intent.  The Michigan Court of Appeals conceded the prosecutor did not prove the cause and origin of the fire, and instead ruled that Petitioner was unable to establish her innocence ruling that "[a]n arson investigator later discredited [Petitioner's] theory." (R 23; Pg ID 329).

4

That same arson investigator had also conceded that supporting physical evidence of arson could not be found in the room of origin. (T II, 197-198).  Under the evidence presented by the prosecutor, under Michigan law all that can be inferred is that this was an accidental fire. *People v Williams*, 114 Mich App 186 (1982).

Furthermore, the Michigan Court of Appeals acknowledges that the prosecutor used their disbelief, and also urged the jury to use their disbelief of Petitioner as the basis to convict.  The United States Supreme Court has been clear: "Nor can the [] disbelief of petitioner's story [] fill the evidentiary gap in the Government's case." *Nishikawa v Dulles,* 356 U.S. 129, 136 (1958).

### 2)   Habeas relief merited where state court made unreasonable determination of facts in light of the record.

The state court made findings of fact based upon assessment of circumstantial evidence that ignored the actual record and then unfairly pyramided that circumstantial evidence when affirming the judgement of conviction.  The operative section of the opinion issued by the Michigan Court of Appeals sets forth their assessment of the circumstantial evidence.

> The prosecution in this case presented significant evidence at trial that defendant had motive and opportunity to commit the charged offense and presented sufficient circumstantial evidence to connect defendant to the commission of the crime. The prosecution presented evidence that defendant had been having an affair and wanted to leave her husband for her boyfriend. Defendant made several comments to a friend indicating that she would rather kill Todd than divorce him. Defendant purchased a container of

5

gasoline on the morning of the murder and later denied it.
Defendant sent her children out for the day and would not allow
them to see their father before they left. Todd suffered head
injuries consistent with being hit with a blunt object and his urine
sample tested positive for Vicodine. The clothing that Todd had
been wearing at the time of the fire smelled strongly of gasoline
and proved to be saturated with gas.

Defendant drove over Todd in the driveway after he escaped the
fire, a fact from which the jury could infer that defendant wanted
to finish the job. Defendant showed a consciousness of guilt by
telling varying tales of how she escaped the burning home. She
also told a friend that she needed to return to the home to retrieve
incriminating evidence (a coffee cup that may have contained
traces of a sedative). Finally, defendant confessed her crimes to a
fellow jail inmate.

When the record is considered, however, there is no support from which to
draw any incriminating inference as discussed in the Amended Reply:

a)      The Michigan Court of Appeals found relevant and material
that a gas can was found at residence, while disregarding that the residence that was
burnt was in a rural type setting with the residence part of a farm/ranch setting with 31
horses on acreage where Petitioner and her family used off the road vehicles and tools
that required gasoline; the Stermer's often purchased gas for equipment from the same
nearby gas station; it was not uncommon for gas cans to be found around the front
yard.   (T II 564; T IV, 16, 113, 159:T V, 9, 76-77, 113).   Two of the sons, Cory Pierce
and Trevor Stermer said that when gas cans for the equipment were empty and needed
to be refilled, it was customary to leave the cans in the front porch area, instead of the
shed, as a reminder to get more gas.  (T IV 159; T V 113).  As the prosecution witness

noted, Petitioner and her family frequently came to the gas station to fill smaller containers of gasoline. Cashier DeLoach did not notice anything different about Petitioner that day of the fire as compared to any other day, as the Stermers frequently purchased small amounts of gasoline for equipment used at their home at that station. (T IV 16).

When examining DeLoach's actual testimony she stated she did not see any gas container and she did not see gas being pumped when Petitioner was at the back of her vehicle. (T IV, 23).  Regarding DeLoach's testimony, the police had previously seized a cash register receipt using Todd Stermer's credit card shortly around 9:00 A.M. and store video footage from that day back in February 2007.  Curiously, the video footage mysteriously turns to a blank screen just minutes before that 9:00 A.M. transaction occurred; however, it took the detective two and a half years after the date of the fire to then interview and obtain DeLoach's statement.   (T III, 110; T IV, 18).

b)      Similarly, there was no evidence that Todd Stermer was drugged that day as the only toxicology results were unremarkable as to alcohol or controlled substances, except finding Hydrocodone (Vicodin) present in the urine, but not in the blood, suggesting it was either consumed a few days earlier, or had been a small, ineffectual dose. (T III 31, 34).  The scientific evidence precludes any finding of a contemporaneous drugging dose having been administered.

c)      The state court made a finding that Petitioner had knocked Todd Stermer unconscious before the fire while ignoring the evidence and photos

7

presented that demonstrated Todd's wounds were from the leading edge of the van occurring after the fire had started. (T III, 24).

        d)     The state court made findings based solely upon testimony of Kate Fox, claiming that Petitioner was holding a shotgun and had threatened to shoot Todd Stermer; that Petitioner had said she would rather kill Todd than divorce him; and that Petitioner later sought to retrieve items from the fire scene. Ms. Fox's testimony during cross examination reveals that Fox was bitter, depressed, and resented Petitioner; that she had been committed to a mental hospital in January of 2007; and that she and Petitioner had ended their friendship in July of 2007 because of $5,000 Fox believed she was owed. The bitterness resulted in Fox later being charged and convicted with criminally assaulting Petitioner in Kalamazoo County in 2007. (T IV 184-185, 188, 190, 195). The available record also demonstrated Ms. Fox shooting claims were nothing more than when telling the police there was a domestic assault involving Petitioner, the police asked if there were any guns in the house, Fox said there were, without no indication that any guns had actually been involved. (T IV, 193-194).

        e)     The state court held that Petitioner wanted to leave her husband for her boyfriend, Chris Williams. The prosecutor called Mr. Williams, and his testimony was that he had worked with Petitioner, (same place where Kate Fox worked); knew she was married; they would go to his place in Kalamazoo; and there was no discussion of her leaving her husband. (T IV, 210-211).

8

f)      Similarly, the claim that Todd Stermer was asleep when the Stermer sons left and that Petitioner told the boys not to say goodbye was belied by the record developed in state courts where Cory Pierce gave a statement under oath to the insurance company and firmly stated Todd Stermer "was awake", "Upstairs in the living room in a chair". (R. 24-18; Page ID No. 2197).

g)      The claim that Petitioner had driven down the driveway in reverse is not what Mike Matheny testified to at trial.  Instead he stated the van "moved around the back of the house in reverse." (T II, 45).  The state courts also claimed the neighbor Matheny was who first noticed Todd lying on the ground; yet again, that was contrary to his testimony, as it was Petitioner who pointed Todd out to Matheny.  (T II, 50).

h)      Additionally, the state court finding that Petitioner had given varying accounts on how she had escaped the fire ignored testimony that Petitioner had consistently provided a similar/same account during her statements given under oath at different times as testified to by Deputy Rought. (T IV, 38, 60-61).

i)      The Michigan Court of Appeals also relied upon and cited jail inmate testimony while ignoring the record that the two (2) jail inmates offered by the prosecution who alleged Petitioner confessed to the crime by drugging, clubbing and lighting the victim on fire, both admitted suffering from mental illness and were off their medications during the time of this alleged encounter with Petitioner.  (TII 143; T III 168-169).   Each of these inmates provided personally, discrediting testimony, such as Veronica Tracy whose behavior was described by the prosecutor as "out there" and

when asked how she controlled her anxiety and psychotic episodes responded "I worked out, the bars. I jammed every day" (T II 143), and, Ms. Gordon, who is prescribed Seroquel,  told the jury she was not guilty of attempted uttering and publishing, the offense she had pled to and was serving, because she had lied to the judge in that case. (T III 165).

j)    Ignored as well by the Michigan Court of Appeals, was the evidence introduced by Todd Stermer's mother, who indicated that prior to his relationship with Petitioner, Todd had two prior homes that had "burned to the ground", and this was the 3rd home of Todd's that had been consumed by fire. (T I 285).

k)    The source and disposition of clothing that was on Todd Stermer was misstated in the findings, and was significant.  It is claimed that Ms. Calhoun placed her sweater over Todd Stermer's lower body.  However, at trial, it was Mr. Matheny, (who owns and operates an auto salvage yard), grabbed a work shirt from his truck, and put over Todd Stermer. (T II, 51-52, 64).   According to Leroy, that work shirt and Todd Stermer's clothing  were left together in the body bag unsecured for 3 days; expectedly, Matheny's work shirt, and items it came in contact with, tested for trace of gasoline.  (T II, 259-260).

Petitioner submits relief is warranted where the state court made objectively unreasonable determinations of fact contrary to the record.

**3)    Habeas relief merited where trial counsel allowed prejudicial, misleading and fundamentally unfair opinion evidence to be admitted.**

10

Petitioner had asked trial counsel to retain a fire cause and origin expert.  In her Motion for relief from judgment she provided the July 9, 2013 affidavit of Martee Bakhuyzen, Petitioner's mother, which sets forth:

> 1.      That I am the mother of Linda Stermer and went with her to Attorney Gettings Office on numerious occasions. That we went to his office asking him to contact Todd Chapmen regarding a previous fire. We gave Mr. Getting the NAME & ADDRESS. He refused to contact saying that he would just deny any involment with my husband concernng the fire. (sic)

> 2.      When my daughter was released on bond, Mr Getting told us that he would need a week for preparing my daughter for trial. We Could not reach Mr. Getting (He did not return our calls. Myself, my daughter and her tharapist decided to bombard his office with phone calls, messages and faxes to reach him until! he called us back. Myself and my daughter went to his office trying to catch him to no avail. When he did get back to us just before the trial he said that "We would be ok".(sic)

> 3. Lastly, we begged Mr. Getting to hire an expert. Mr. Getting assured us that an expert in the firld of arson or fire investigation was a waste of money and he woud use the prosecutors ecperts to his own means. Mr. Gettings assured us that the case against my daughter was purly circumstantial and that she had nothing to prove, he also stated that the prosecutor could prove nothing and would not be able to convict her with what little they hadf. (sic) (R. 28-14, Pg ID 2200).

Todd Chapman had told Stermer family members that he had helped Todd Stermer commit arson in the past, and Petitioner wanted to bring in that evidence, as well as evidence of the prior fires of Todd's residences.

11

Petitioner also submitted an affidavit to the state courts indicating her requests of trial counsel to obtain records concerning the status and condition of the house at the time of fire and to retain an expert:

> In preparing for my jury trial in this matter, I had conversations with my trial counsel, Jeffrey S. Getting, about retaining a defense expert in fire science (arson) to review the prosecution's evidence on that topic and to potentially testify at my trial. Attorney Getting was told that funds were available to do so. To my best knowledge and belief, attorney Getting never retained a defense expert. As of this date, I do not know why no defense expert was retained.
>
> In preparing for my jury trial in this matter, I had conversations with my trial counsel, Jeffrey S. Getting, about obtaining building permits to show that our home was in the process of being constructed. I do not know why those were not used at trial.  (R 24-18, Pg ID 2140).

Petitioner wanted an expert witness involved, but trial counsel would not bother with an expert.  Trial counsel went to trial without an expert and without even becoming familiar with the basic and requisite standards for cause and origin experts. Trial counsel did not even make any attempt to become familiar with arson investigation to assure only admissible evidence would be used against his client.

The Michigan Court of Appeals also noted the nature of the expert testimony against Petitioner:

> The prosecution also presented evidence that the fire was set intentionally, not accidentally. The fire was fast moving and quite destructive, suggesting that someone used an accelerant to start it. The arson investigator opined that the point of origin for the fire was the center of the living room where Todd lay on a recliner. Further, the investigator opined that Todd was the source point of the fire given the presence of gasoline on his sweatpants and underwear.

12

The fire expert in this case lacked the acknowledged training and methodology to determine cause and origin and was unable to render any opinion that was supported by reliable and accepted standards and guides and did not involve the scientific method.

The prosecution's expert was not qualified to testify as an expert. As stated in *NFPA 921*, the scientific method consists of defining the problem, collecting data, analyzing the data, developing hypotheses (e.g., what could have caused the fire), testing the hypotheses, and considering alternative hypotheses.[1]

In that 2000 DOJ report, the panel stated NFPA 921 had "become the benchmark for the training and expertise of everyone who purports to be an expert in the origin and cause determination of fires". Similarly, the 2009 NAS report revealed significant deficiencies in forensic science as a whole—and fire science specifically—as well as confirming NFPA as foundational on fire science.

The record includes evidence submitted to the trial court, including the drawings and details of the house, circumstances not considered by the prosecution expert who had assumed the house had been entirely finished when it was not. (R. 24-18; Page ID 2091-2096). NFPA standards were introduced as well, demonstrating the very unscientific approach taken by the prosecution witness and how and why his opinion lacked any validity or involved the scientific method. (R. 24-18; Page ID 2106-2115). The prosecution expert should not have been allowed to testify, and his

---

[1] *Fire and Arson Scene Evidence: A Guide for Public Safety Personnel* June 2000 NCJ 181584  *https://www.ncjrs.gov/pdffiles1/nij/181584.pdf*

testimony was prejudicial, making Petitioner's trial fundamentally unfair: Habeas relief is merited. *Han Tak Lee v. Houtzdale Sci*, 798 F. 3d 159 (3rd Cir, 2015)

### B)    Exceptional Circumstances

Previously, district courts have considered the likelihood of success of the claims as demonstrating exceptional circumstances.  In *Gilliland v. Stynchcombe,* No. C76-376 (N.D.Ga. June 4, 1976) the court released the petitioners in *Gilliland* on bail pending adjudication of their state and federal remedies, after finding that "the likelihood of success on the merits of an application for habeas corpus relief is excellent."

Judge Quist in *United States v. Hill*, 827 F.Supp. 1354, 1356-58 (W.D.Tenn.1993) found exceptional reasons where successful appeal was likely because the district court believed that the evidence was insufficient under circuit precedent to support conviction for aiding and abetting, but that the district court lacked the authority to enter sua sponte a judgment of acquittal).

In a footnote judge Quist noted:

> "After the sentencing in this case, the Court, on its own initiative, researched whether there had been sufficient, competent evidence presented to the jury to sustain a conviction of Leslie Tyrone Hill on Counts 1 and 2 of the complaint. The Court also researched whether, if indeed there was insufficient evidence, what could be the possible remedy. Under *United States v. Davis,* 992 F.2d 635 (6th Cir.1993), the court could not *sua sponte* enter a judgment of acquittal for Mr. Hill…"

14

Later decisions by the courts have not defined with clear limits of the term exceptional circumstances; however, this District has found the ill health of the Petitioner constitutes exceptional circumstances.  *Puertas v. Overton*, 272 F. Supp. 2d 621 (E.D. Mich. 2003).

Petitioner submits that it is helpful to look at §3145(c) decisions where the district court may release any defendant on appeal if defendant shows exceptional circumstances.  Examples of what has been considered exceptional circumstances are found in decisions, such as *U.S. v. Kenney,* 2009 WL 5217031 (D. Me. 2009) (death of grandmother exceptional circumstance); *U.S. v. Rentas*, 2009 WL 3444943 (S.D.N.Y. 2009) (ill child in need of care exceptional circumstance); *U.S. v. Boston*, 2008 WL 4661026 (W.D.N.C. 2008) (family hardship and other factors can be exceptional circumstance); *U.S. v. Herrera-Soto*, 961 F.2d 645 (7th Cir. 1992); *U.S. v. DiSomma*, 951 F.2d 494 (2d Cir. 1991); *U.S. v. Carr,* 947 F.2d 1239 (5th Cir. 1991); *U.S. v. Jones*, 979 F.2d 804 (10th Cir. 1992); *U.S. v. Mostrom*, 11 F.3d 93 (8th Cir. 1993); *U.S. v. Cantrell*, 888 F.Supp. 1055 (D.Nev. 1995); *U.S. v. Burnett,* 76 F.Supp.2d 846 (E. D.Tenn. 1999); *U.S. v. Price*, 2008 WL 215811 (W.D.N.C. 2008).

In addition to substantial claims of law supported by the record, Petitioner presents exceptional circumstances involving her aged, disabled parents requiring attendant care, and the changes to Petitioner while incarcerated and her accomplishments.

15

Petitioner Linda Stermer has provided a letter for the Court's consideration, setting forth her progress and accomplishments while incarcerated and currently. (Appendix Item 2).

Petitioner was released on bond pending charges, and while defending against charges, did everything she could do to maintain stability and continuity for her children, at first commuting the children to school while living with her parents, and then changing homes and jobs.

Consistent with the nature of Petitioner, she also made sure the person who had posted bond for her pretrial release was paid back.  (Appendix Item 1).

While incarcerated, Petitioner Stermer has maintained her relationship with most of her children, Stermer's sons will not communicate with her, and has developed a relationship with  five (5) grandchildren demonstrating her responsibility to her family. During this time, she has also used her time constructively, enrolling in and successfully completing several programs and units.   In recognition of her progress, MDOC staff nominated her to be one of the core members of the program "Chance For Life" and for the initial group of Prisoner Observation Aides, who watch prisoners on suicide watch. Certificates were earned after completion of these programs.

Petitioner Stermer has become an officer of the National Lifers Association, and has become involved in the day to day operations as a unit representative.  She has also completed additional programs, including anger management.   Recently, Petitioner Stermer had been serving as live-in care attendant for a blind inmate, providing daily attendant care.

Petitioner Linda Stermer presents as an extremely low security and flight risk, and has productively and appropriately availed herself of the programs and opportunities made available at the Huron Valley Women's Complex.

Petitioner concedes that a low security risk and the recognized maturation of a habeas petitioner is not enough to constitute an exceptional circumstance. However, when considered in the context of the dire and immediate need for attendant care for her parents, an exceptional circumstance is present.

Appendix Item 3, is the April 23, 2017 letter from Petitioner's mother, Martee Bakhuyzen detailing her health status and that of Petitioner's father, Hendrik Bakhuyzen.

Hendrik Bakhuyzen is 80 years old and has required a dozen stints inserted to permit sufficient blood flow. In 2016, he suffered a silent heart attack and was involved in an automobile accident; shortly thereafter the 12th stint was inserted. Hendrik has also been treated for a-fib requiring electrical shock treatment to the heart. Recently it was found out that Hendrik will need eye surgery.

Martee Bakhuyzen is 68 years old, and her health has deteriorated rapidly to the point of being unable to take care of Hendrik or herself. Martee has suffered from MS since 1983, and had been coping adequately until suffering a bad fall in 2013 resulting in permanent nerve damage to the left side of her face and head. In 2014, she fell and broke her left ankle which required use of pins and a plate to correct. In 2015, Martee had both of her knees replaced, and the pins removed from her ankle.

17

The ankle did not heal as hoped and in January 2017 she underwent surgery for tendon removal and repair.   Currently she is scheduled for a second hip replacement, as she continues therapy for her ankle.

The hip surgery and follow-up care will require assistance and attendant care that is not available to Martee and Hendrik Bakhuyzen, creating hardships and unnecessary suffering.

Petitioner submits that she has presented fairly debatable questions meriting, under the extraordinary circumstances of this case, release pending habeas corpus.

### RELIEF REQUESTED

WHEREFORE, Petitioner moves this Court to order the release of Petitioner, Linda Stermer, upon her own recognizance, or, in the alternative, upon reasonable surety, and upon such conditions that the Court finds just and proper.

Respectfully submitted by:


/s Sheldon Halpern
shalpern@sbcglobal.net


_____
SHELDON HALPERN (P14560)
SHELDON HALPERN, P.C.
Attorney for Petitioner Stermer
26339 Woodward Avenue
Huntington Woods, Michigan 48070
(248) 554-0400 Fax: (248) 554-0411

Date: August 11, 2017

18