IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| LINDA STERMER, ) | |
|     Petitioner, ) | |
| ) | CASE NO. 2:12-cv-14013 |
| vs. ) | |
| ) | HON. ARTHUR J. TARNOW |
| MILLICENT WARREN, ) | |
|     Respondent. ) | |
| _____/ | |

**PETITIONER'S RESPONSE WITH BRIEF IN SUPPORT TO RESPONDENT'S MOTION FOR STAY PENDING APPEAL, MOTION FOR IMMEDIATE OR <u>EXPEDITED CONSIDERATION, AND BRIEF IN SUPPORT [ECF NO. 67]</u>**

**Motion/Objection**

COMES NOW, Petitioner, LINDA STERMER, through attorneys Wolfgang Mueller and Debra K. Hampton, and submits this motion as the "Petitioner's Response with Brief in Support to Respondent's Motion for Stay Pending Appeal, Motion for Immediate or Expedited Consideration, and Brief in Support." Petitioner respectfully moves this Court to deny Respondent's motion for a stay pending appeal. In support thereof, Petitioner states:

1. On January 31, 2019, the undersigned filed an Entry of Appearance in the Sixth Circuit Court of Appeals, Case No. 19-1075 on behalf of Linda Stermer. *Stermer v. Millicent*.

1

2.  Petitioner admits the State sought concurrence for its motion under Local Rule 7.l(a). Petitioner's Counsel advised Respondent there would be no concurrence setting forth several reasons.

3.  The Respondent disputed none of the factual allegations in the state court and remained silent after an evidentiary hearing was ordered. An evidentiary hearing is to determine material fact issues that are in dispute with the Respondent state remaining silent.

4.  In the Respondent's motion and brief, Respondent claims it has shown at the very least a substantial case on the merits of the appeal further engaging egregious prosecutorial misconduct.

5.  The Respondent alleges "to retry Stermer in accordance with this Court's grant of conditional habeas relief while the State's appeal is pending would potentially moot out the significant issues being raised by the State on appeal. Further, a stay would avoid the difficult questions raised if Stermer is acquitted at a second trial or convicted of a lesser offense, and the Sixth Circuit later reverses this Court's decision." [Dkt. No. 67 at 2]. Petitioner states the Respondent's claims are wholly frivolous and without merit for several reasons addressed herein.

6.  This response is timely.

**Supporting Facts in Opposition of Stay**

1. The predicate felony for the first-degree murder conviction was arson as determined by this Court in the Opinion and Order. [Dkt. No. 56 at 1].

2. James Shinsky, a contract investigator with Farm Bureau Insurance company, testified at the evidentiary hearing[1] he made a report based on his investigation at the scene. [E.H. Vol. II at 48, 49].

3. Shinsky had a pecuniary interest in finding there was arson in this case to avoid a loss over $400,000.00 to Farm Bureau Insurance company.

4. Shinsky's report and interview were turned over to the prosecution because Scott Leroy admitted having requested the information. [E.H. Vol. II. 84] Leroy was asked if he knew Mr. Shinsky before trial and he said "Yes." *Id*. Leroy also admitted that he had obtained Shinsky's interview of Petitioner. *Id.* [E.H. Vol. II. 94]

5. In Shinsky's interview with Petitioner, he learned of the towels that smelled like gas in the washing machine by Petitioner's admission to him. In Shinsky's interview [Dkt. No. 46-2] he asked "You talked about-the towel that you were trying to launder that smelled like oil or fuel. And then you tried to wash that?" Petitioner replied "Yeah." [Dkt. No. 46-2 at 68].

6. Shinsky asked Petitioner in the interview "Now did you smell ... Well

---

[1] Transcript from October 24, 2018 October 25, 2018 herein after [E.H. Vol. II]

what was it? You said it stunk; what did it, smell like to you?" Petitioner replied; "It just smelled like oil or gas, or something." [Dkt. No. 46-2 at 68]

    7.    Shinsky lied and committed fraud[2] created by expectation bias and his pecuniary interest to determine the fire was arson. Shinsky was asked:

> Q. In that same regard, when you found this, in making your determination, am I correct, you made a determination that Mrs. Stermer did not tell the truth by indicating that there was nothing in the house that she knew to be gasoline?
>
> A. I think I got misinformation. She assured me there was nothing in the home in the interview and I found a gasoline sample in the washing machine. [E.H. Vol. II. 58]

    8.    Shinsky made materially false statements about his interview with Petitioner in his initial investigation. Shinsky's testimony at the evidentiary hearing was controverted by Leroy's testimony at the hearing. Shinsky's testimony was:

> The interview process when I interviewed Mrs. Stermer we go through the list of accelerants or things stored in the home. She indicated the only type of flammable or ignitable liquid would be possibly some oil from the fuel oil furnace that dripped on the floor near the furnace and that there was no -- we asked is there gasoline or kerosene and there was none of that in the interview where she told me it would be found in the home. And then I took clothing from the washing machine after

---

[2] Published Articles [Dkt. No. 46-1 at 4] "*Expectation Bias*."
- April 2000    **Insurance Fraud, How Large Does It Have to Be?**
  IAAI Fire and Arson Investigator magazine
- January 2000    **Vehicle Arson and Fraud**
  IAAI Fire and Arson Investigator magazine
- October 1998    **Fraud Fighting Tools**
  IAAI Fire and Arson Investigator magazine
- March 1998    **Begin with a Fire, End with a Fraud**
  IAAI Fire and Arson Investigator magazine

4

the fire and it came back positive for gasoline. The engineers, I had engineers eliminate the mechanical equipment and the electrical equipment. [E.H. Vol. II. 57]

9. Leroy's testimony indicated the accelerant canine did alert in the area of the leaky fuel oil furnace and the areas that the canine searched had no other alerts. [E.H. Vol. II. 87]. This fact corroborated Petitioner's statements in Shinsky's interview of Petitioner creating fundamental error.

10. Shinsky was asked "[w]as there any accelerant whatsoever found in the home other than what have you indicated in the washing machine?" He responded "I don't know." [E.H. Vol. II. 55].

11. Shinsky's testimony contradicted what Petitioner told him about the discovery of the fire in the interview. He testified "When the fire was discovered Mrs. Stermer came up the stairs and her description was that the recliner her husband was in and him were both on fire." [E.H. Vol. II. 56]. This is directly controverted again by Shinsky's transcribed interview.

12. Petitioner told Shinsky there was fire between "our bedroom and his recliner" and that her husband was on fire. [Dkt. No. 46-2 at 5] She also told Shinsky:

> Um, when I came around the corner from the stairway, to the living room, there was a lot of fire between our bedroom door and his recliner. And he was more closer [sic] to our bedroom, and there was just fire and a lot of smoke, and it ... But there was no fire from ... there was a point in the living room where there, it, it was like, it was between our bedroom and his recliner, but nothing on this side of it.

[Dkt. No. 46-2 at 29].

13. After the testimony at the evidentiary hearing it was clear that the allegations of arson were predicated upon materially false statements by Shinsky and Leroy, thus removing the predicate felony of first-degree murder.

14. Shinsky was asked "[w]ith respect to any physical findings that you have made, did you make any physical findings that would be contrary to what you just described Mrs. Stermer advised you?" Shinsky's answered; "I have no evidence of that." [E.H. Vol. II. 56]

15. Shinsky was asked: "Were you aware at the time that you made your report that testing found there was an accelerant on the deceased's clothing?" He responded, "No. Today is the first time I heard that." [E.H. Vol. II. 57]. This demonstrates a failure to investigate, making a factual determination impossible. The accelerant that was on the deceased's clothes was explained in the evidentiary hearing.

## **Brief in Support**

## **ARGUMENT AND AUTHORITY**

The Respondent argues that a stay should be granted, arguing *Hilton v. Braunskill*, 481 U.S. 770 (1987)[3], which established a four-factor test to determine whether a stay should be granted pending the State's appeal of a grant of habeas relief: First, whether the State has made a strong showing that it is likely to succeed on the merits on appeal. Here, the Respondent fails to meet its burden demonstrating a likelihood of success on appeal because of the prosecutorial misconduct and the denial of fundamental fairness.

The Respondent urges this Court "[e]ven if this Court disagrees that the State has a strong chance of success on appeal, the other three *Hilton* factors weigh in favor of a stay. Most significantly, there is no significant prejudice to Stermer in granting a stay." [Dkt. No. 67 at 5] Petitioner argues the other three factors discussed below are outweighed by the unfair prejudice to Petitioner and the Respondent's undue delay to comply with this Court in the Opinion and Order. [Dkt. No. 56 at 1] and Judgment. [Dkt. No. 57]

---

[3] See also *Virginia Petroleum Jobbers Assn. v. FPC*, 104 U. S. App. D. C. 106, 110, 259 F.2d 921, 925 (1958); *Washington Metropolitan Area Comm'n v. Holiday Tours, Inc.*, 182 U. S. App. D. C. 220, 221-222, 559 F.2d 841, 842-844 (1977); *Garcia-Mir v. Meese*, 781 F. 2d 1450, 1453 (11th Cir. 1986); *Accident Fund v. Baerwaldt*, 579 F. Supp. 724, 725 (W.D. Mich. 1984); see generally 11 C. *Wright & A. Miller, Federal Practice and Procedure* § 2904 (1973).

The second factor a Court should determine is whether the State will be irreparably injured if Petitioner is released. Petitioner argues the State will not suffer irreparable injury if Petitioner is released as Petitioner is released on an Own Recognizance Bond. The Respondent appealed this Court's decision granting a conditional writ and continues to argue how this Court was wrong in its findings. Respondent remained silent in State court proceedings and continues to argue in an attempt to harm Petitioner, wanting to uphold an unconstitutional judgment.

The third factor a Court should determine is whether failure to release the Petitioner will substantially injure the other parties interested in the proceeding. Petitioner argues that releasing her does not substantially injure Respondent because of the unconstitutional loss of liberty Petitioner suffered due to the flagrant defiance of fundamental fairness and arbitrary actions of the government.

The fourth factor a Court should determine is whether the public interest is served. Respondent alleged:

> [I]f the State establishes that there is a risk that the prisoner will pose a danger to the public if released, the court may take that factor into consideration in determining whether or not to enlarge him. The state's interest in continuing custody and rehabilitation pending a final determination of the case on appeal is also a factor to be considered; it will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served.

*Hilton,* at 777.

Petitioner argues the Respondent has failed to meet its burden within the fourth factor in determining if a stay should be issued. Petitioner states this Court has already determined the interests of the public would not be jeopardized by releasing Petitioner pending appeal. Since Petitioner's release, she has established gainful employment. She has reported to her Bond Agent faithfully and complied with the Court's conditions specified in the bond, combined with the additional conditions imposed by the Bond Agent. The State's interests in continuing custody and an alleged rehabilitation is a frivolous assertion by the Respondent. Respondent's motion for stay must be denied in its entirety.

### *Prosecutorial Misconduct Finding by the District Court is Correct under the Analysis by the Supreme Court of the United States.*

Respondent argues in opposition to this Court's determination of prosecutorial misconduct, because it applied the Sixth Circuit's two-part, four-factor test for determining whether prosecutorial misconduct amounted to a denial of due process. [Dkt. No. 67 at 5-6] Respondent argues the SCOTUS has reversed the Sixth Circuit for applying this test in habeas cases. (*citing Parker v. Matthews*, 567 U.S. 37, 48-49 (2012)). Respondent admits "this Court did also cite relevant Supreme Court precedent [Dkt. No. 67 at 6] (quoting *Parker* and *Darden v. Wainwright*, 744 U.S. 168 (1986)), alleging this Court failed to recognize the level of impropriety required for prosecutorial misconduct to rise to the level of a due process violation.

9

Petitioner argues a state court conviction based on prosecutorial misconduct must focus on due process violations. See *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974). Here, the District Court focused on a multitude of flagrancy by the prosecution finding that the prosecutor's conduct was so egregious that it was a deprivation of due process. Petitioner argues the facts set forth above indicate that a new factual predicate was discovered in the evidentiary hearing that the prosecution relied upon fabricated statements from James Shinsky and Scott Leroy who knew of the false statements alleged by Shinsky. Since Leroy based his opinion on Shinsky's expectation bias, which "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," *United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)), this amounts to non-harmless constitutional error.

Prosecutorial misconduct requires vacating the conviction when there is a corruption of the ***truth-seeking function*** of the trial process and the tainted evidence was material to the case. The knowing use of perjured testimony from the prosecution was egregious as it was material to the case. See *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Napue v. Illinois*, 360 U.S. 264, 272 (1959); *Brady v. Maryland*, 373 U.S. 83 (1963). This materiality requirement implicitly recognizes that the misconduct's effect on the trial is the crucial inquiry for due process purposes. The Petitioner states a stay cannot be issued.

### *Prosecutor's Closing Arguments Created Undue Prejudice.*

During closing arguments, the prosecution improperly, stated: "… isn't it ironic and coincidental that there was a gas can right out front where the van was, right where the vehicles were?" (Tr. V. 107). Similarly, the prosecutor created evidence during closing, telling the jury about some cell phones, not supported with physical evidence, and telling the jury; "The phones were in the van according to her," (Tr. V. 119), and then using this created fact as a basis to infer Petitioner was not driving to get help. The issue about the phones was prejudicial because Leroy testified at trial "An able-bodied person can see that and take proper steps, even if it's -- even if they don't do anything themselves, **by just calling 911** the fire department is going to get there in time to contain this fire before it burns all the way up to the ceiling . . . ." [Tr. III. 199] There was no testimony or evidence that the phones were in the van, only the prosecutor's self-serving conclusory allegations. Instead, Petitioner's prior statements were consistent; her phones were in the house, and destroyed in the rubble. There was nothing to support the prosecution's claims.

Later in rebuttal the prosecutor told the jury:

One of the other things I want to clear up right away, Mr. Getting keeps making reference to two previous first, two previous fires, the second which Linda Stermer is living with him and even by her own version it's not an arson, nor was the first one ... But there is no evidence that it was arson, so it's nonsense. (Tr. V. 169-170).

11

The prosecutor was informing the jury there was no indication those prior fires were arson, misleading the jury into thinking the police had exonerated Todd Stermer of arson in those prior cases. This Court determined the prosecutor lied to the jury when he said there was no evidence of arson in the previous two fires. [Dkt. No. 56] A Portage Police report, which was in the State's possession at the time of trial, indicated that the fire at the house in Portage "was definitely an arson" for which the insured party, Todd Stermer, "was regarded as the suspect." Police Dep't Supp. Rep., Mar. 31, 1992, Pet.'s Ex. 10. [Dkt. No. 56]

This Court was clear in its determination, finding: "[a]lthough not admitted into evidence at trial, the report directly contradicts the prosecutor's statement that Mr. Stermer had never been involved with suspected arson. Thus, the prosecutor acted improperly by arguing that any evidence of prior arson was "nonsense" because he not only misrepresented the testimony at trial, but also gave the jury information which he knew, or had reason to know, was false." [Dkt. No. 56] This is clearly an act prejudicial to the administration of justice, an act of deceit. This is the type of misconduct which required relief in the form of a new trial. *Hodge v Hurley*, 426 F.3d 689, (6th Cir. 2005); *Donnelly v DeChristoforo*, 416 U.S. 637 (1974). The District Court was correct by ordering a New Trial.

The prosecutor also took every opportunity during closing, over a dozen times, to call Defendant a liar. (Tr. V. 109-129). Beginning early in the argument

12

with: "we know she is a liar. There is no question but that she is a liar and will lie when it suits her okay." (Tr. V. 109); and finishing the argument with "I would suggest that we are dealing with a diabolical, scheming, manipulative liar and murderer." (Tr. V. 129).

However, when it came to prosecution witnesses, the prosecutor impermissibly both vouched for, and bolstered testimony. When speaking about Cindy Deloach, the prosecutor told the jury: "I would submit she certainly appears to be a very credible person who has recall of the incident, has no reason to make anything up." (Tr. V. 113).

As to Mike Matheny and Connie Calhoun, the prosecutor said "they were in here telling the truth." (TV 121). Similarly, when discussing Ms. Tracy and Ms. Gordon, the prosecutor stated neither had an "incentive to lie, neither one of them do. They are getting absolutely nothing . . . ." (TV 126). The prosecutor's "improper statements were peppered throughout the prosecutor's closing argument." The prosecutor did not simply make "an off-hand remark in a heated trial[;]" quite the contrary, he "select[ed] inappropriate arguments and use[d] them repeatedly during summation." *Bates v. Bell*, 402 F.3d 635, 648 (6th Cir. 2005). [Dkt. No. 56]

These tactics employed by the State "casts the prosecutor in the role of an ***architect*** of a proceeding that does not comport with standards of justice." *Brady,*

13

*supra*. In *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)[4], the Court clarified that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with "***rudimentary demands of justice.***" See *Pyle v. Kansas*, 317 U.S. 213 (1942). See *New York ex rel. Whitman v. Wilson*, 318 U.S. 688 (1943) and *White v. Ragen*, 324 U.S. 760 (1945). *Cf. Mesarosh v. United States*, 352 U.S. 1 (1956). (Same); See also, *Alcorta v. Texas*, 355 U.S. 28 (1957).

In *Napue,* 360 U.S. at 269, ([t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears). Here, false evidence and perjured testimony has gone uncorrected by the Respondent. A new trial is required if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." *Napue*, *supra*, at 271. (quoting *Giglio* at 154). The false testimony without question affected the verdict of the jury entitling Petitioner to a new trial. The guarantees of the Bill of Rights are the protecting bulwarks against the reach of arbitrary power. *Glasser v. United States*, 315 U.S. 60, 69 (1942). *Cf. Collins v. Harker Heights*, 503 U.S. 115, 126 (1992) (noting that the Due Process Clause was intended to prevent government officials "from abusing [their] power, or employing it as an instrument of oppression") (quoting *DeShaney*

---

[4] The principle of *Mooney v. Holohan*, *supra*, is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. (quoting *Brady* at 87).

14

*v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 196 (1989), See also *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)), *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). Here, the Respondent fights to uphold a flagrant constitutional violation and argues any error was harmless. Petitioner should rightfully be discharged from the unconstitutional judgment she is under but in no way should a stay be granted.

### *Constitutional Violation Under the Fourteenth Amendment Right to a Fair Trial.*

Further, a federal court may overturn a conviction resulting from a State trial if the State's actions "violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). The District Court found:

I. Defendant was denied her Fourteenth Amendment right to a fair trial when the court allowed Scott Leroy to testify as an expert on cause and origin. The court did not fulfill its role as "gate keeper" when Leroy was allowed to present unreliable testimony to the jury as an expert, which did not comport with MRE/FRE 702. The allowance of Leroy's testimony was an abuse of discretion and prejudicial to Stermer under MRE/FRE 403. [Dkt. No. 57]

II. The prosecutor prejudiced defendant and committed reversible error when he engaged in improper conduct:

A. Vouching for and bolstering the credibility and testimony of seven State's witnesses during closing arguments.

B. Offered facts not in evidence, he knew to be false, and mischaracterized facts during closing arguments.

15

      C.      Denigrated the defendant and appealed to the passions and emotions of the jury with repeated, impermissible name calling and character assassination of Stermer during closing arguments.

      D.      Eliciting known false testimony from State's witness Cory Pierce.

      E.      Elicited testimonial evidence from Detective Rought, which could not be supported with documents due to destruction of evidence.

III.    Defense counsel's performance was constitutionally deficient under the Sixth Amendment and Const 1963, art 1, § 20, and precluded defendant from mounting a substantive and effective defense. This is a violation of guaranteed due process rights under the Fourteenth Amendment, and Const 1963, art 1, § 20 where counsel failed to: Challenge the theory of arson on a scientific level, investigate and prepare, to consult with an expert to rebut the prosecution's arson expert, to interview any State's witnesses or experts, to question potential witnesses and to object to improper conduct by the prosecutor, and failure to be aware of rules critical to the case.

IV.    Appellate counsel raised weak issues on appeal while ignoring stronger, more meritorious arguments. Counsel's deficient performance prejudiced Stermer and violated her Sixth Amendment due process rights.

V.    Defendant's conviction should be reversed because the evidence was legally insufficient to prove beyond a reasonable doubt that the fire was intentionally set or that defendant intentionally set the fire that resulted in the felony murder charge. The verdict was contrary to the great weight of the evidence and MRE/FRE 702.

      The District Court also properly addressed the AEDPA's deferential standard of review where the Court explained: "A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the

decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "If a state court's finding rests on thin air, the petition will have little difficulty satisfying the standards for relief under § 2254." *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000). Here, the state court's arbitrary determination rested on thin air. This Court found that the state court adjudicated none of the claims addressed on the merits, which warranted de novo review of these claims.

## **CONCLUSION**

WHEREFORE, Petitioner respectfully moves this Honorable Court to deny Respondent's request for a stay as the Respondent has failed to meet its burden of establishing entitlement to a stay pending appeal. This Court further determined:

> No accelerants were detected inside the home. Mr. Stermer's clothing tested positive for an accelerant (gasoline), but Petitioner's did not. The prosecution's expert concluded that the fire was intentionally set and that Mr. Stermer had been at the center of the fire. Petitioner argued that this evidence, when considered alongside the fact that two of Mr. Stermer's previous homes were destroyed by suspected arson fires, supported her defense. She also argued that an oil lamp and burning candles present in the family room might have accidentally started the fire.

Petitioner argues issuing a stay only creates undue prejudice and delay to correcting an unconstitutional judgment and this Court should deny Respondent's request and grant any other relief this Court deems equitable and just.

        Respectfully submitted,

        *s/Wolfgang Mueller*
        MUELLER LAW FIRM
        Attorney for Plaintiffs
        34405 W. Twelve Mile Rd., Ste. 200A
        Farmington Hills, MI  48331
        (248) 489-9653
        wolf@wolfmuellerlaw.com
        P43728

        /s/DEBRA K. HAMPTON
        DEBRA K. HAMPTON, OBA # 13621
        Hampton Law Office, PLLC
        3126 S. Blvd., # 304
        Edmond, OK 73013
        Phone: (405) 250-0966
        Fax: (866) 251-4898
        E-Mail: hamptonlaw@cox.net
        Attorney for Petitioner

Date:  April 1, 2019

---

**CERTIFICATE OF SERVICE**

    I hereby certify that on 4/1/19, I electronically filed the attached document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

    Linus Banghart-Linn
    Assistant Attorney General
    Banghart-linnl@michigan.gov

    I further hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  N/A

        s/Wolfgang Mueller
        MUELLER LAW FIRM
        34405 W. Twelve Mile Rd., Ste. 200A
        Farmington Hills, MI 48331
        248-489-9653
        wolf@wolfmuellerlaw.com